# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1043

ALPHONSO HUBANKS,

*Petitioner-Appellant,*

v.

MATTHEW J. FRANK, Secretary,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 C 457—**Charles N. Clevert, Jr.**, *Judge.*

_____

ARGUED SEPTEMBER 13, 2004—DECIDED DECEMBER 22, 2004

_____


Before BAUER, RIPPLE, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner-Appellant Alphonso Hubanks brought this habeas corpus claim under 28 U.S.C. § 2254, challenging his Wisconsin state conviction for four counts of first-degree sexual assault, one count of armed robbery, and one count of abduction. The district court denied the petition and discovery. Hubanks appeals, and we affirm.


## I. Background

On the evening of August 24, 1989, two men abducted a 15-year-old girl while she awaited her parents in their car idling outside of a store. As the abductors drove off with the

victim in her parent's car, one of the men put a baseball cap over her face. The victim testified that the men took her jewelry and, upon threat of death, demanded she remove her clothing. Both men then forced her to engage in acts of sexual conduct. During the assault, one of the men asked, "Do you want to feel good or die?" and threatened, "Don't let me have to kill you." Although the victim could not clearly see her assailants, through a hole in the back of the cap she observed one of them holding what she thought to be a gun. After the assault, the men released the victim and drove off with her jewelry.

The incident was reported, and within hours police had the stolen car under surveillance. Soon thereafter, the defendant, Alphonso Hubanks, and a companion emerged from a bar and approached the stolen vehicle. The engine would not start, so the two men got out and opened the car's hood. As the police approached, Hubanks tossed several objects under a nearby car. The items included the victim's jewelry, coins, the keys to the stolen car, and a glass smoking pipe, which the victim later identified as the object she thought was a gun.

The following morning, Hubanks appeared in a police lineup, in which he spoke the words used by the assailant. Although the victim could only describe her assailants as two black men, she positively identified Hubanks by his deep, "frog-like" voice.

At trial, the state moved for an in-court voice identification of Hubanks, requesting that he repeat the same words he had spoken at the police lineup. Hubanks objected on the grounds that it violated his privilege against self-incrimination and was prejudicial. As an alternative, Hubanks proposed that the court conduct another lineup at trial, rather than require Hubanks alone to speak. The court denied the proposal and ordered Hubanks to provide the voice

sample. Hubanks refused. As part of the closing instructions to the jury, the court included the following:

> Now, a Defendant in a criminal case has the absolute Constitutional right not to testify. The Defendant's decision not to testify must not be considered by you in any way and must not influence you in your verdict; however, the Defendant was requested to give a voice sample by stating the words that the . . . [victim] testified were said on the night in question for purposes of testing her capacity to identify the voice as the same one she heard that night. The Defendant has declined to give that voice sample by stating those words and you may, therefore, give that declination the weight you think it deserves in considering the guilt or innocence of the Defendant.

The jury found Hubanks guilty.

Following trial, the district attorney took possession of the trial exhibits—which included the victim's semen-stained underwear—and turned them over to the Milwaukee Police Department for storage. Fifteen months later, while the case was on appeal, the police destroyed the exhibits. Soon thereafter, the Wisconsin Court of Appeals affirmed the conviction. Hubanks' postconviction motions and petition for writ of habeas corpus were denied on state collateral appeal, as were his petition for habeas relief under 28 U.S.C. § 2254 and motion for discovery before the district court.

The following issues have been certified for appeal to this court: (1) whether Hubanks' due process rights were violated by the destruction of evidence; (2) whether Hubanks' right to remain silent was violated by the order to provide an in-court voice sample; (3) whether Hubanks' right to remain silent was violated by the court's jury instructions; and (4) whether Hubanks was denied effective assistance of counsel at trial or on appeal.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 controls this habeas case. This statute provides that habeas relief shall not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). Hubanks argues both that the Wisconsin Court of Appeals made unreasonable applications of federal law and that the state court's decision was based upon unreasonable determinations of the facts. We therefore discuss both parts of the statute.

Habeas relief is appropriate pursuant to § 2254(d)(1) if the state court identified the right legal principle as determined by the Supreme Court but unreasonably applied that principle to the facts of the case. The standard for proving an unreasonable application of federal law, however, is more demanding than for proving an erroneous application of that law. *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999). We review legal questions and mixed questions of law and fact *de novo*, but uphold decisions that are either "minimally consistent with the facts and circumstances of the case" or "one of several equally plausible outcomes." *Id.* at 522-23. A state court's findings of fact are presumed correct. *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999). The reasonableness of these findings can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## A. Due Process

Hubanks argues that his due process rights were violated when the Milwaukee Police Department, having accepted possession of the trial exhibits from the Milwaukee District Attorney's Office, destroyed the exhibits while his appeal was pending. According to Hubanks, destruction of the exhibits prevented him from performing DNA analysis on what he claims was potentially exculpatory evidence, thereby denying him a meaningful opportunity to present a complete defense.

### 1. Determinations of Fact

Hubanks challenges the reasonableness of the Wisconsin Court of Appeals' findings of fact. The appeals court found that the exhibits were not destroyed in bad faith, but rather were disposed of pursuant to a policy of the police department. The appeals court found further support for lack of bad faith in both the timing of the evidence's destruction and the fact that no tests were pending when the exhibits were destroyed. In addition, the court of appeals found that the destroyed evidence lacked true exculpatory value because it could not have eliminated Hubanks as one of the two assailants.

Hubanks first argues that it was unreasonable for the court of appeals to find that the exhibits were destroyed pursuant to departmental policy when the policy was un-written, the police gave somewhat inconsistent explanations for why the exhibits were destroyed, and the exhibits at one point bore notations that they were to be preserved. The record, however, supports the court of appeals' finding. It contains evidence that the exhibits bore a notation by police, albeit an incorrect one, that Hubanks had pleaded guilty and that therefore the exhibits could be destroyed in one year, pursuant to departmental policy. The exhibits were de-stroyed 15 months later. Hubanks fails to rebut the pre-

sumptive reasonableness of these findings. That the police department's policy for retention of exhibits was unwritten is not proof that the policy did not exist or that the practice was not routinely observed. Similarly, the inconsistencies to which Hubanks refers may be indicative of confusion within the department, but they are far from clear and convincing evidence of bad faith. Finally, while evidence that the exhibits bore two contradictory notations— one to preserve the exhibits pending a "possible" appeal, and the other erroneously referencing a guilty plea—may reflect careless police work, it is not clear and convincing proof that the police acted in bad faith. *See Montgomery v. Greer*, 956 F.2d 677, 681 (7th Cir. 1992) (holding, "mere negligence, without more, does not amount to a constitutional violation").

Hubanks also argues that it was unreasonable for the court of appeals to find that the police department had a policy that violated state law. Hubanks refers here to a Wisconsin statute, which provides:

> The retention and disposal of all court records and exhibits in any civil or criminal action or proceeding of any nature in a court of record shall be determined by the supreme court by rule.

WIS. STAT. § 757.54 (1987-88). The Wisconsin Supreme Court Rule ("SCR") stated:

> **SCR 72.01 Retention of original record.** Except as provided in SCR 72.03 to 72.05, the original paper records of any court shall be retained in the custody of the court for the following minimum periods:
>
>> **(46) Criminal case exhibits, paper and non-paper.** One year after the time for appeal has expired, provided that return of the exhibit has been offered to the proffering party.

SCR 72.01(46). It appears that the substance of the police department's policy for retention of trial exhibits is con-

sistent with state law, with the possible exception of the proviso to SCR 72.01(46). Both require preservation of exhibits for one year after the time for appeal has elapsed. That being the case, and there being evidence in the record that the police believed Hubanks had pleaded guilty, the mere existence of the state law is not clear and convincing proof that the police acted in bad faith.

Second, Hubanks argues that it was unreasonable for the court of appeals to find that the passage of time and lack of a pending test request indicated an absence of bad faith, because the police should have been aware of the long-range exculpatory potential of DNA testing. The record indicates that the exhibits were destroyed 15 months after Hubanks' trial. During that 15-month period, no requests were made to conduct further tests on the evidence. It was reasonable for the appeals court to interpret these factors as evidence that the exhibits were not destroyed in bad faith, but rather pursuant to departmental policy.

Third, Hubanks argues that the court of appeals unreasonably found that the exhibits lacked exculpatory value. To support this contention, Hubanks proposes a hypothetical scenario in which DNA testing of the lost evidence inculpates not one but two assailants, neither of whom are Hubanks. This speculation does not rebut the appeals court's finding.

### 2. Application of *Youngblood*

Hubanks also argues that while the Wisconsin Court of Appeals identified the correct Supreme Court precedent, *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the court unreasonably applied *Youngblood* to the facts of his case. *Youngblood* is relevant when the government has failed to preserve evidence, but no more can be said of that evidence than that "it *could* have been subjected to tests, the results of which *might* have

exonerated the defendant." *Youngblood*, 488 U.S. at 57-58 (emphasis added). In such situations, failure to preserve evidence is not a violation of due process rights unless the defendant can demonstrate: (1) bad faith on the part of the government; (2) that the exculpatory value of the evidence was apparent before it was destroyed; and (3) that the evidence was of such a nature that the petitioner would be unable to obtain comparable evidence by other reasonably available means. *Id.*; *California v. Trombetta*, 467 U.S. 479, 488-89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *United States v. Watts*, 29 F.3d 287, 289-90 (7th Cir. 1994).

Hubanks argues that the court of appeals misinterpreted the "apparent exculpatory value" language of the Supreme Court's decision in *Youngblood*. The Court, however, specifically stated, "The possibility that the semen *could* have exculpated respondent if preserved or tested is not enough to satisfy the standard of constitutional materiality in *Trombetta*." *Youngblood*, 488 U.S. at 56 n.* (emphasis added). Evidence lacks apparent exculpatory value when, as here, analysis of that evidence would have offered "simply an avenue of investigation that might have led in any number of directions." *Id.* at 57 n.*. A favorable DNA test would not have exonerated Hubanks, there having been two assailants, one of whom was never apprehended. As a result, the evidence had no apparent exculpatory value, and the court of appeals' application of *Youngblood* was reasonable.

**B.  Self-Incrimination**

The district court certified two issues in connection with Hubanks' refusal to provide a voice sample. The first is whether Hubanks' right to remain silent was violated by the trial court's order to provide the sample. The second is whether the trial court's jury instructions constituted an impermissible penalty on Hubanks' right to remain silent. We analyze both of these issues under 28 U.S.C. § 2254(d)(1) to determine whether the Wisconsin Court of Appeals made

an unreasonable application of clearly established federal law when it applied the principles from *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), to these facts.

The Self-Incrimination Clause of the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The Supreme Court has since delineated the scope of this protection as it pertains to voice samples ordered in pre-trial situations. In *Wade*, the Court observed that "the privilege [against self-incrimination] 'protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature'." *Wade*, 388 U.S. at 221 (quoting *Schmerber v. State of California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). Therefore, the Court held, compelling a defendant "to utter words purportedly uttered by [an assailant], was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying characteristic, not to speak his guilt." *Id.* at 222-23. *See also United States v. Dionisio*, 410 U.S. 1, 7, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (holding suspects before a grand jury could be ordered to provide voice samples, as they were used "solely to measure the physical properties of the witnesses' voices, not for the testimonial or communicative content of what was said"). Similarly, in *Muniz*, a drunk driving suspect was ordered upon arrest to provide a voice sample, which was videotaped and later shown at trial. The Court found the order constitutional. "Requiring a suspect to reveal the physical manner in which he articulates words, like requiring him to reveal the physical properties of the sound produced by his voice . . . does not, without more, compel him to provide a 'testimonial' response for purposes of privilege." *Muniz*, 496 U.S. at 592.

Hubanks argues that it was unreasonable for the court of appeals to apply the Supreme Court's principle regarding pre-trial voice samples to these facts in light of the views of several Justices in *Wade* who, dissenting in part and concurring in part, argued the holding should not extend to the trial context. The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," however, refers to the holdings, not the dicta of the Court's decisions. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d. 389 (2000). *See also Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996) (holding a rule is "clearly established" only if it is compelled by existing Supreme Court precedent). Consequently, the dissenting and concurring opinions in *Wade* do not constitute clearly established law for purposes of § 2254(d)(1) analysis.

Although the holdings in *Wade* and *Muniz* did not compel the court of appeals' decision, the conclusions the court drew based upon the rationales underlying those decisions were reasonable. Like the defendants in *Wade* and *Muniz*, Hubanks was ordered to make a statement so that the physical properties of his voice could be assessed. Therefore, his speech would not have been protected because it would not have been testimonial. Furthermore, it should be noted that in *Muniz* the videotape of the pre-trial voice sample was later admitted into evidence and shown at trial. As a result, we believe the court of appeals was reasonable in applying *Wade* and *Muniz* to determine that the trial court's order did not violate Hubanks' right to remain silent.[1]

---

[1] Of course, all interests would have been better served had the issue been resolved pre-trial, as this would have allowed for a taped voice identification without risk of prejudicing Hubanks.

Since the court-ordered voice sample would have consti-
tuted non-testimonial, and thus unprotected, speech, the
court was free to instruct the jury that it could give Hubanks'
declination to provide the sample the weight it deserves.
The appeals court acknowledged *Griffin v. United States*,
380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which
forbids comment on the accused's silence or instructions
by the court that silence is evidence of guilt, but was rea-
sonable in distinguishing *Griffin* from situations involving
non-testimonial speech. Consequently, the jury instructions
here were accurate and did not violate Hubanks' Fifth
Amendment rights. Moreover, the trial court had no duty to
include in its jury instructions Hubanks' proposal for an in-
court lineup, so its refusal to do so was not unreasonable.

As a final matter, Hubanks argues that we should take
into account that, at the time he was ordered to give a voice
sample, some of the words he was ordered to recite had not
yet been admitted into evidence. We agree with the court of
appeals that Hubanks has procedurally defaulted this claim
by not raising it at trial. Therefore, we decline to address it.

## C.  Ineffective Assistance of Counsel

The district court certified, in connection with the *Wade*
issues above, the issue of whether Hubanks received inef-
fective assistance of counsel because his trial counsel did
not object to the jury instructions and because his appellate
counsel did not raise the issue of trial counsel's failure to
object to the content of the voice sample. To prove an
ineffective assistance of counsel claim, a petitioner must
establish both that his counsel's representation fell below
an objective standard of reasonableness and that he was
prejudiced as a result. *Strickland v. Washington*, 466 U.S.
668, 687, 104 S.Ct. 2052, 90 L.Ed.2d. 674 (1984). Because

the court-ordered voice sample was not testimonial in na-
ture, trial counsel had no obligation to object to the court's
jury instructions. Further, the content of the transcript
Hubanks was ordered to recite is irrelevant; the voice
sample was still non-testimonial. Consequently, both trial
and appellate counsel provided Hubanks with adequate
representation.

### D.  Request to Conduct Discovery

As an alternative to a grant of habeas relief, Hubanks
requests leave to conduct discovery pursuant to his claim
that the police destroyed the trial exhibits in bad faith. Rule
6(a) of the Rules Governing § 2254 Cases provides that a
petitioner can invoke discovery, but only "if and to the
extent that, the judge in the exercise of his discretion and
for good cause shown grants leave to do so, but not other-
wise." *See Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct.
1793, 138 L.Ed.2d 97 (1997). In order to satisfy the two
requirements of the Rule 6(a) test, Hubanks must: (1) make
a colorable claim showing that the underlying facts, if
proven, constitute a constitutional violation; and (2) show
"good cause" for the discovery. *Henderson v. Walls*, 296 F.3d
541, 553 (7th Cir. 2002), *vacated on other grounds*, 537 U.S.
1230, 123 S.Ct. 1354, 155 L.Ed.2d 194 (2003); *see also
Harris v. Nelson*, 394 U.S. 286, 298-300, 89 S.Ct. 1082, 22
L.Ed.2d 281 (1969). Good cause, however, cannot exist
where the facts alleged do not provide a basis for relief.
*Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.
1990).

The district court did not abuse its discretion in denying
Hubanks' motion. In *Bracy*, the petitioner sought leave to
conduct discovery in order to prove his claim that corrup-
tion on the bench had deprived him of his right to a fair
trial. The petitioner demonstrated good cause by submitting

the trial judge's indictment for fixing cases, proof of his own attorney's admitted complicity in the scheme, and evidence that cases directly before and after his had been fixed. *Bracy*, 520 U.S. at 906-07. The evidence Hubanks offers is slight by comparison, for all of the reasons discussed in our analysis of his *Youngblood* claim. Moreover, the overall evidence against Hubanks was voluminous. Hubanks was found only hours after the assault, attempting to start the car that was stolen from the victim's parents. When the police approached, he tried to discard the car keys and the jewelry he was carrying, which belonged to the victim. Furthermore, the victim positively identified Hubanks' voice in a police lineup the morning after the attack, and enzyme analysis of the victim's underwear could not rule out Hubanks as an assailant. In this context, the district court exercised appropriate discretion in denying further discovery.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's decision that Hubanks is not entitled to federal habeas relief or leave to conduct discovery.

No. 04-1043

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*