**James WREN, Petitioner–Appellant,**

**v.**

**Quala CHAMPAGNE,\* Respondent–Appellee.**

**No. 04–3005.**

United States Court of Appeals, Seventh Circuit.

Submitted March 2, 2005.\*\*

Decided March 2, 2005.

---

\* Wren originally named Daniel Bertrand as respondent. The petitioner's current place of incarceration is the Racine Correctional Institution. Quala Champagne is the warden there and as such as been substituted as the respondent in the instant appeal. 28 U.S.C. § 2254, Rule 2(a); Fed. R.App. P. 43(b); Cir. R. 43.

\*\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

James Wren, Green Bay, WI, for Petitioner–Appellant.

Peggy A. Lautenschlager, Office of the Attorney General Wisconsin Department of Justice, Madison, WI, for Respondent–Appellee.

Before BAUER, RIPPLE, and ROVNER, Circuit Judges.

## ORDER

Wisconsin prisoner James Wren petitioned for federal habeas corpus relief under 28 U.S.C. § 2254, challenging the voluntariness of his guilty plea. After denying Wren's petition, the district court certified for appeal the issue whether the state violated his due process rights by breaching a promise to call several assistant district attorneys to testify favorably at sentencing about Wren's cooperation in an unrelated prosecution. We now affirm the district court's denial of Wren's § 2254 petition.

Starting in November 1986, Wren committed a series of burglaries and armed robberies, resulting in his guilty pleas in December 1989 to burglary, armed robbery, theft of a firearm, and bail jumping. After he was charged but before he pleaded guilty to those offenses, Wren assisted the state in convicting two renowned, local criminals for an unrelated arson. Wren volunteered information and testified without negotiating a plea bargain or demanding other consideration from the state. Because of Wren's assistance, however, the state planned to speak favorably at his sentencing hearing.

At Wren's change-of-plea hearing in December 1989, the trial court determined that Wren was pleading guilty without benefit of a plea agreement. Counsel for Wren acknowledged the absence of an agreement but represented to the court that given Wren's "absolute, voluntary statement" about the arson the state was prepared to speak at sentencing about his assistance. In response to the court's questions, Wren himself testified that no one had made any threats or promises in exchange for his guilty pleas. After a thorough plea colloquy, the trial court accepted Wren's guilty pleas.

Afterward, while on bond awaiting sentencing, Wren committed another armed robbery. He pleaded guilty to this new charge at the same time he was sentenced in October 1990 for his previous offenses. In light of the new offense, the prosecutor informed the trial court that those district attorneys who had planned to speak about Wren's voluntary cooperation in the arson case no longer were going to do so. Wren's lawyer tried to emphasize that Wren gave the state information about the arson even though "absolutely no promises" were made in exchange, but even counsel recognized the harm Wren had done to himself by committing yet another robbery. The trial court, although acknowledging the great service that Wren provided the state, still sentenced him to 63 years' imprisonment because the additional robbery demonstrated Wren's dangerousness to the community.

More than six years later, on May 9, 1997, Wren filed his § 2254 petition. Although the petition was several weeks past the end of the one-year grace period applicable to convictions that became final before passage of the Anti–Terrorism and Effective Death Penalty Act, *see Newell v. Hanks,* 283 F.3d 827, 833 (7th Cir.2002), the district court held that the statute of limitations had been equitably tolled. A problem with exhaustion later prompted the court to hold Wren's § 2254 petition in abeyance while he returned to state court

and argued in a postconviction petition that his guilty pleas were involuntary because they were induced by the state's broken promise to introduce favorable testimony at his sentencing. The postconviction court denied relief after concluding that the state's plan to have prosecutors testify at the sentencing was never more than an "informal proposition" and not a term of a plea agreement. If there had been an agreement, the court added, it would have been "off" after Wren committed another robbery. The state appellate court agreed that there was no plea bargain, and the state supreme court denied his petition for leave to appeal.

Back in federal court, Wren repeated his claim that an unfulfilled promise induced his guilty pleas. The district court, while accepting the finding of the state postconviction court that there had been no *plea bargain*, nevertheless concluded that the state courts had never resolved "the issue that matters": whether the "informal proposition," even if not part of a plea agreement, was still a promise that induced Wren to plead guilty under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The district court went on to conclude that the informal proposition was indeed a promise but not one that induced Wren to plead guilty.

AEDPA requires exceptional deference to a state court's conclusions. *Baird v. Davis*, 388 F.3d 1110, 1124 (7th Cir.2004). A federal court cannot grant habeas corpus relief unless the state court's decision was "contrary to" or "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *see Hubanks v. Frank*, 392 F.3d 926, 929 (7th Cir.2004). We presume a state court's factual findings to be correct, and an applicant may rebut that presumption only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). With regard to the district court, we review its findings of fact for clear error and its legal conclusions de novo. *Pruitt v. McAdory*, 337 F.3d 921, 924 (7th Cir.2003).

In our view, the district court drew too fine a distinction in reading the state courts' factual findings as excluding the question whether a promise by the state induced Wren to plead guilty. In fact the postconviction court's finding that no plea bargain existed—a finding in turn upheld by the state appellate court—is dispositive with regard to that question. Ordinary contract principles govern plea agreements, *United States v. Bradley*, 381 F.3d 641, 648 (7th Cir.2004), and a contract is "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RESTATEMENT (SECOND) OF CONTRACTS § 1 (1981); *see Walker v. Abbott Labs.*, 340 F.3d 471, 476 (7th Cir.2003). Thus, by finding that there was no plea bargain, the state courts addressed "the issue that matters" adversely to Wren: no promise was given in exchange for his guilty pleas. The existence and terms of a plea agreement are questions of fact, *United States v. Williams*, 198 F.3d 988, 992 (7th Cir.1999), and the district court was bound by the state courts' finding that no such agreement was ever made, *see Hubanks*, 392 F.3d at 929.

In any event, the district court's analysis leads to the same conclusion reached by the state courts—that Wren was not induced by any promise to plead guilty— regardless whether the state's "informal proposition" is labeled a promise or not. Wren presented no evidence to the state courts to undercut the conclusion that the

state's "proposition" occurred outside the realm of plea negotiations and was not made in consideration for Wren's guilty plea. *Cf. United States v. Smith,* 953 F.2d 1060, 1066 (7th Cir.1992) (promise must be material to the plea); *see also Harding v. Walls,* 300 F.3d 824, 829 (7th Cir.2002) (reassurances for cooperating with government outside "realm of negotiations" not promise of beneficial consideration). Without a promise negotiated in exchange for Wren's guilty plea, Wren then entered into his plea voluntarily, and there is no due process violation even though the state ultimately did not speak favorably at his sentencing. *See Brady v. United States,* 397 U.S. 742, 747, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (due process requires plea agreements to be voluntary); *Galbraith v. United States,* 313 F.3d 1001, 1006 (7th Cir.2002).

Wren additionally attempts to build support for his argument that he pleaded guilty involuntarily by construing dicta from the state circuit court's decision to be a factual finding that the government made a promise in consideration for his guilty plea. The relevant section from the state circuit court's decision reads: "The defendant may very well have entered a guilty plea to the charges on October 27, 2000 because of the agreement he had with the district attorney's office, as he claims, 'which included [several district attorneys'] coming to the defendant's sentencing. However, once he committed another serious felony, he significantly jeopardized those expectations." Given the statement's context, we agree with the district court that the state circuit court was providing an alternate ground for resolving the case in which the court allowed for the possibility that Wren pleaded guilty based on the government's promise without deciding the issue.

AFFIRMED.