**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 1, 2006[*]
Decided November 2, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-1832

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 4:04CR40030-001-JPG |
| JOSEPH SANDERS, *Defendant-Appellant.* | J. Phil Gilbert, *Judge.* |

## O R D E R

Federal inmate Joseph Sanders was convicted of possessing a prohibited object after prison guards discovered a makeshift knife hidden in his shoe. *See* 18 U.S.C. § 1791(a)(2). The district court sentenced him as a career offender to 60 months' imprisonment, the applicable statutory maximum. *See id.* § 1791(b)(3), (d)(1)(B). We affirm.

Sanders was serving a term of imprisonment at the United States Penitentiary in Marion, Illinois ("USP-Marion"), when the knife was found in May 2004. At trial the government presented the testimony of Officers Matthew Grant

---

[*] We granted the appellant's unopposed motion to waive oral argument. Thus, the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(f).

and Wayne Boaz, prison guards at USP-Marion, and Larry Kammerer, the prison's law-enforcement coordinator. Grant and Boaz both testified that, while conducting a routine search for contraband in Sanders's prison cell, they searched Sanders and found a makeshift knife concealed in his right shoe; a prison security tape that captured the search shows Boaz reaching into Sanders's shoe and removing a small item. The knife was fashioned out of 3½ inches of sharpened metal and was wrapped in feces-covered cellophane and toilet paper. The officers seized the knife and gave it to Kammerer to retain as evidence; according to Kammerer, he placed the knife into evidence storage but destroyed the wrappings because he believed they were bio-hazards that had no evidentiary value. Grant and Boaz also testified that shortly after they seized the knife Grant asked Sanders where he got the metal to fashion it. According to both officers, Sanders replied, in substance: "Doesn't matter where I got it. I'll have another one shortly."

In his defense Sanders first called FBI Special Agent Bastian Fruend, who investigated the incident. Fruend testified that, although Officer Boaz did not mention overhearing Sanders's boast to Officer Grant that he could get another weapon, Grant did report Sanders's statement, which Fruend documented in his investigation report. Sanders then testified that Boaz "planted" the knife in his shoe, and he denied telling anyone that he could get another weapon.

At the close of evidence, Sanders moved for a judgment of acquittal or, in the alternative, a new trial. He argued that the knife wrappings were exculpatory, and that their destruction thus violated his right to due process as recognized in *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984). He also claimed that the government violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose before trial that Officer Boaz was present when Sanders informed Officer Grant that he could obtain a new weapon. The district court denied the motion and found Sanders guilty.

At sentencing the court determined that Sanders was a career offender with a total offense level of 17 due to three prior convictions in Palm Beach, Florida, for crimes of violence. *See* U.S.S.G. § 4B1.1(b)(F). Combining this offense level with Sanders's Criminal History Category of VI yielded a guidelines imprisonment range of 51 to 60 months, and the court sentenced Sanders at the high end. Sanders appeals and we affirm.

On appeal Sanders challenges the denial of his motion for a judgment of acquittal or new trial. Sanders continues to deny possessing the knife, and asserts that DNA testing of the knife wrappings would have proven definitively "whose rectal cavity had harbored the weapon prior to it allegedly being found in [his] shoe." He also asserts that the government's failure to disclose that Officer Boaz was present when he told Officer Grant he could get another weapon kept him from

using that information to "impeach" Grant at trial. In addition, Sanders challenges the district court's sentencing determination that he is a career offender. He argues that his previous convictions occurred during a time that the Palm Beach County court system "was fraught with racially discriminatory practices and fundamental defects to the extent that [his prior] convictions could not be presumed to be constitutional." All of these contentions are patently frivolous.

Sanders did not challenge the destruction of the knife wrappings before trial, *see* Fed. R. Crim. P. 12(b)(2), but even if he had, it is clear that their destruction did not violate due process. First, Sanders fails to show that the district court erred in finding that Kammerer did not act in "bad faith" when he destroyed the knife wrappings. In this context, bad faith means a "'conscious effort to suppress exculpatory evidence,'" *United States v. Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000) (quoting *Jones v. McCaughtry*, 965 F.2d 473, 477 (7th Cir. 1992)); thus, a finding of bad faith turns on "the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed," *see Youngblood*, 488 U.S. at 56 n.*; *Chaparro-Alcantara*, 226 F.3d at 624. Here, the district court found that Kammerer had no "suspicion that the source of the feces could in any way be considered exculpatory evidence," and we will uphold this determination unless it is clearly erroneous. *See United States v. Garza*, 435 F.3d 73, 75 (1st Cir. 2006). Sanders, however, offers nothing but conclusory assertions that Kammerer's explanations for destroying the wrappings are "absurd" because, in Sanders's opinion, the officer should have known that the wrappings had sufficient evidentiary value to warrant saving. Even if we were to agree with Sanders's assertions (and we do not), his argument fails because to establish bad faith he must point to much more than purported "absurdity," *see Henry v. Page*, 223 F.3d 477, 481-82 (7th Cir. 2000), or negligence, *see Hubanks v. Frank*, 392 F.3d 926, 930 (7th Cir. 2004). He must show that Kammerer consciously destroyed evidence he knew was exculpatory, *see Chaparro-Alcantara*, 226 F.3d at 624, and absent such a showing we cannot say that the district court committed clear error in finding that Kammerer did not act in bad faith.

Although Sanders's failure to show that Kammerer acted in bad faith obviates any need to examine the materiality of the knife wrappings, *see Jones*, 965 F.2d at 478-89, we do so only to point out that they were neither "apparently exculpatory" nor "potentially useful," *see Youngblood*, 488 U.S. at 57; *Trombetta*, 467 U.S. at 488-89. Sanders was charged only with possession of the knife, and there is overwhelming evidence pointing to his guilt—namely, the testimony of Officers Grant and Boaz and the security video showing Boaz finding the knife in Sanders's shoe. Thus, DNA testing of the knife wrappings could not exculpate Sanders; rather, the most that testing would prove is that Sanders obtained the knife from someone else immediately before Boaz found it in his shoe. *See Henry*, 223 F.3d at 481 (holding that destruction of narcotics did not violate defendant's

right to due process where there was "nothing in the record to suggest that the substances possessed an exculpatory value that was apparent before they were destroyed"); *Hubanks*, 392 F.3d at 931 ("A favorable DNA test would not have exonerated [defendant]. . . . As a result, the evidence had no apparent exculpatory value [under *Youngblood*].").

Sanders's *Brady* claim likewise fails. The government made available to Sanders written reports detailing his oral statement to Officer Grant that he could quickly obtain another weapon, *see* Fed. R. Crim. P. 16(a)(1)(A)-(B), so Sanders was aware that his statement could be used against him at trial. Nothing in Rule 16 required that Boaz's testimony be disclosed before trial, *see id.*; *United States v. Edwards*, 47 F.3d 841, 843 (7th Cir. 1995), and since Boaz's account of Sanders's statement was *inculpatory*, and not exculpatory, neither did *Brady* require advance disclosure, *see United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001).

Finally, Sanders's challenge to the application of the career-offender guideline fails. At sentencing he was foreclosed from raising any collateral attack on his predicate state convictions so long as he was represented by counsel during those proceedings, which he was. *See Daniels v. United States*, 532 U.S. 374, 378 (2001) (citing *Custis v. United States*, 511 U.S. 485, 490-97 (1994)); *Ryan v. United States*, 214 F.3d 877, 877 (7th Cir. 2000).

AFFIRMED.