In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 19-3227

RONNIE L. FAMOUS,

*Petitioner-Appellant,*

*v.*

LARRY FUCHS, WARDEN,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:10-cv-00707 — **William C. Griesbach**, *Judge.*

———————

ARGUED SEPTEMBER 29, 2021 — DECIDED JUNE 29, 2022

———————

Before EASTERBROOK, RIPPLE, and ST. EVE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In 1998, in Wisconsin state court, a jury convicted Ronnie Famous of four counts of first-degree sexual assault of a child and one count of exposing a child to harmful material. The court sentenced him to 168 years of confinement. Mr. Famous then challenged his convictions on direct appeal. In 2001, the Wisconsin Court of Appeals

affirmed his convictions, and the Wisconsin Supreme Court denied relief on November 27, 2001.[1]

Mr. Famous did not file a petition for certiorari in the Supreme Court of the United States. The one-year statute of limitations period under the Antiterrorism and Effective Death Penalty Act ("AEDPA") therefore began to run on February 25, 2002, the date on which the time to file a petition expired.[2] Mr. Famous failed to file a federal petition for habeas corpus by the one-year deadline. When he finally filed his petition on August 17, 2010, the district court dismissed it as untimely, rejecting Mr. Famous's arguments that he was entitled to the defenses of statutory and equitable estoppel.

We now affirm the judgment of the district court. The court did not abuse its discretion in denying Mr. Famous the defense of statutory estoppel. Mr. Famous failed to set forth sufficient information to raise statutory estoppel to the State's statute of limitations defense. Indeed, he failed to provide even the information reasonably available to him. Given the laconic nature of his submission, the district court also did not abuse its discretion in denying Mr. Famous's request to take further discovery on that issue.

The district court also did not abuse its discretion in rejecting the defense of equitable tolling. The court did not clearly err in concluding that, even excluding the period when his appellate attorney allegedly retained his file, Mr. Famous still had not filed his petition in a timely manner. The district

---

[1] R.65 at 3.

[2] *See* Sup. Ct. R. 13.1 (setting forth the ninety-day period for filing a petition for certiorari in the Supreme Court of the United States).

court's decision that Mr. Famous's chronic mental illness did not impede a timely filing also is supported by the record and therefore is not clearly erroneous.

## I

## BACKGROUND

We begin by setting out, in broad strokes, the legal landscape and essential facts of the situation before us.

AEDPA imposes a one-year statute of limitations period on habeas petitioners in custody pursuant to a state-court judgment. 28 U.S.C. § 2244(d)(1). But the one-year statute of limitations is tolled if the petitioner applies for state postconviction relief or for other collateral review of the judgment. § 2244(d)(2). Moreover, the statute of limitations does not run if an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States … prevented [the petitioner] from filing." § 2244(d)(1)(B). Additionally, the doctrine of equitable tolling also may apply to a habeas petition if the petitioner, here Mr. Famous, demonstrates that he pursued his rights diligently and that some extraordinary circumstance nevertheless prevented him from timely filing. *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014).

As we noted earlier, Mr. Famous's one-year statute of limitations period under AEDPA began running on February 25, 2002. He therefore had until February 25, 2003, to file a federal habeas petition.[3] He did not file a petition in federal

---

[3] *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply … . The limitation period shall run from the latest of—(A) the date on which

court until August 17, 2010. He recognizes that he did not file his petition by the statutory deadline but asserts that the period should be tolled.

We now review the events between the denial of his direct appeal from his state conviction and the filing of his federal habeas petition in August 2010 that Mr. Famous claims affect his filing deadline.

After the Wisconsin Supreme Court denied his request for further direct review in November 2001, Mr. Famous's appellate attorney retained his legal case file until June 2005. The record reveals that, during this time, Mr. Famous sent four letters to the attorney, asking for his file.[4] On June 28, 2005, Mr. Famous finally received his legal case file.[5] He immediately gave it to a jailhouse lawyer to help him prepare his habeas petition. The very next month, however, prison officials confiscated Mr. Famous's file from the jailhouse lawyer when they transferred that individual to a segregation unit. Mr. Famous made several requests to prison authorities for his file, but they did not return the material to him until April 30, 2007.[6]

_____

the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]").

[4] The letters are dated: February 12, 2002; June 16, 2002; October 20, 2003; November 27, 2004. R.53-1 at 10, 11, 13, 14.

[5] R.53 at 19.

[6] _Id._ at 19–20. Mr. Famous submitted letters and complaints to the prison, which responded to him. The record indicates these letters and responses were exchanged on these dates: October 15, 2005; September 26, 2006; October 3, 2006; October 13, 2006. R.53-1 at 16–25.

On June 18, 2007, Mr. Famous filed his first petition for writ of habeas corpus with the Wisconsin Supreme Court, but it was denied on August 14, 2007.[7] After this denial, Mr. Famous took no further action until June 2008. The record contains minimal information about this time. As we will discuss later, the State asserts, and the district court agreed, that the statute of limitations ran during this time; Mr. Famous maintains that this period should be tolled because his severe mental illness prevented him from filing a petition in a timely manner.[8]

On June 16, 2008, Mr. Famous attempted to file, in the Wisconsin circuit court, a second habeas petition, but was unsuccessful. Mr. Famous claims that a court clerk told him that he needed to file additional papers with his petition before the court would accept it.[9] After doing as instructed, Mr. Famous mailed the petition to a judge of that court on July 21, 2008.[10] After some time had passed and he had failed to receive a response from the court, he withdrew the petition and filed it

---

[7] The Wisconsin Court of Appeals noted in a 2009 decision, "WSCCA records indicate that in June 2007, Famous filed a petition for writ of habeas corpus in the supreme court, which the court denied *ex parte*. We have no information as to the substance of the petition or the basis for the denial." R.50-4 at 3.

[8] On appeal, Mr. Famous contends that he suffered a mental illness throughout the entire period from February 2002 to August 2010. Appellant's Br. 22.

[9] R.53-1 at 35–48.

[10] R.53 at 23.

with the Wisconsin Court of Appeals on March 16, 2009.[11]
Mr. Famous's petition alleged that "his resentencing was ille-
gal and unconstitutional, and that trial, postconviction, and
appellate counsel were ineffective for failing to address the
resentencing issue."[12] The petition was denied on May 5,
2009.[13]

In its opinion denying Mr. Famous's petition, the Wiscon-
sin Court of Appeals rejected his claims and directed him to
file a proper motion in the circuit court. The court noted that
Mr. Famous's resentencing was neither illegal nor unconsti-
tutional.[14] Next, the court quickly dispensed with several of
Mr. Famous's other arguments before turning to his assertion
that counsel's failure to address the resentencing issue had
denied him effective representation during every stage of

---

[11] *Id.* at 23–24.

[12] R.50-4 at 1–2.

[13] The Wisconsin Court of Appeals recognized the difficulty in establish-
ing the procedural history of this case. The court included this footnote in
their order:

> "Famous' memorandum in support of his petition imparts little
> procedural history, and he provides us with no records other
> than the hearing transcripts from his 1998 sentencing and 2001
> resentencing. We thus look to docket entries reported on the Wis-
> consin Circuit Court Access (WCCA) and Wisconsin Supreme
> Court and Court of Appeals Access (WSCCA) websites, although
> the docket entries provide little substantive data."

*Id.* at 2.

[14] Mr. Famous was originally sentenced to life without parole but was
later resentenced to 168 years due to the improper application of a sen-
tencing enhancement.

trial, sentencing, and on appeal. The appellate court explained that Mr. Famous must bring his ineffective assistance of trial and postconviction counsel in the trial court either by a petition for habeas corpus or by a motion under Wisconsin statute § 974.06.[15] The court also addressed his claim that his appellate counsel rendered ineffective assistance by failing to challenge the resentencing issue. It noted that it had already concluded that his contention was not supported by law because the failure to pursue a meritless course of action does not constitute deficient performance. After the denial, Mr. Famous filed a petition for review with the Wisconsin Supreme Court, but it was denied on August 17, 2009. His motion to reconsider was also denied on September 3, 2009.

Mr. Famous took no further action until August 17, 2010, when he filed his first petition for habeas corpus in federal court. On October 28, 2010, he filed an amended petition and a motion to stay his federal case so that he could pursue unexhausted claims in state court.[16] The district court stayed the

---

[15] *Id.* at 6–7.

[16] The district court summarized his reasons for requesting the stay:

"Famous asserts that he failed to exhaust these claims for several reasons. First, he states that he could not exhaust his claims because his appellate counsel was ineffective. Famous indicates that there was also delay caused by his appellate counsel's failure to give him all of the files and documents promptly after his appeal concluded. Second, he contends that prison officials caused a delay by confiscating his legal documents from the jail house lawyer who was preparing documents for him inasmuch as he is incompetent. Third, Famous asserts that he has very limited access to the law library. Finally, he reiterates that he was mentally incompetent and unable to file his Wis. Stat. § 974.06 motion."

federal case on January 31, 2011, to permit Mr. Famous to exhaust state remedies.

After Mr. Famous exhausted his claims in state court proceedings from 2013 to 2018, he filed a third amended habeas petition in federal court on February 13, 2019. The district court screened the petition and ordered the State to respond. On April 15, 2019, the State filed a motion to dismiss the petition, asserting that it was untimely. Mr. Famous responded with statutory and equitable tolling arguments. On October 10, 2019, the district court granted the State's motion to dismiss. It concluded that Mr. Famous's petition was time-barred by AEDPA's one-year statute of limitations for filing a habeas petition in 28 U.S.C. § 2244(d)(1)(A). Consequently, it did not reach the merits of either of Mr. Famous's ineffective assistance of counsel claims.

## II

## DISCUSSION

Our review of a district court's decision declining to apply statutory or equitable estoppel is for abuse of discretion. *See Schmid v. McCauley*, 825 F.3d 348, 350 (7th Cir. 2016) (citing *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008)).[17]

---

R.22 at 3–4.

[17] When a district court rules on the issue of equitable tolling and when there is an obvious need for further record development, we have not applied that deferential standard but have reviewed the matter de novo. *Schmid v. McCauley*, 825 F.3d 348, 350 (7th Cir. 2016). For the reasons explained later in the text, we do not think that such a situation is presented here.

## A. Statutory Tolling

We first address Mr. Famous's statutory tolling claim. Mr. Famous submits that the prison law library failed to provide him with a copy of the AEDPA statute and therefore he was unaware of the one-year statute of limitations.[18] He contends that by not providing him a copy of AEDPA's time limitations, the Green Bay Correctional Institution ("GBCI") prevented him from learning of the one-year limit and therefore created an impediment under 28 U.S.C. § 2244(d)(1)(B). Mr. Famous invites our attention to our decision in *Estremera v. United States*, 724 F.3d 773, 776 (7th Cir. 2013). He submits that the district court further abused its discretion in denying his request for discovery to develop fully the factual circumstances supporting his contention.

In rejecting this argument, the district court reasoned that a petitioner's ignorance or misunderstanding of the law did not constitute the extraordinary circumstances necessary for equitable tolling. The State relies on the district court's rationale. It further submits that the present case is not controlled by *Estremera*. In that case, the State points out, the petitioner alleged that he was in segregation and had no access to the prison library during the entire period for which he sought equitable tolling.

In *Estremera*, we held that "lack of library access can, in principle, be an 'impediment' to the filing of a collateral

---

[18] R.53 at 15 ("Because the GBCI law library did not provide a copy of AEDPA's time limitations, which establishes the one-year period of limitation for filing of § 2254 petitions." [sic]).

attack." *Id.* at 776.[19] We joined two other federal circuits that had reached the same conclusion. *See id.* at 777 (noting our agreement with *Egerton v. Cockrell*, 334 F.3d 433, 438 (5th Cir. 2003), and *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc)). Like our sister circuits, however, we made clear that whether a petitioner could invoke the statutory re-set provision depended on whether the petitioner could demonstrate a need for access to the library. *See id.*

The district court correctly noted that, in general, a petitioner's lack of knowledge of governing legal rules does not justify the invocation of statutory or equitable tolling. *See So-cha*, 763 F.3d at 685; *Arieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006). *Estremera*, and its companions in other circuits, articulate the important qualifier to that general principle: The State's creation or maintenance of an impediment to a petitioner's acquiring necessary information can excuse, under extraordinary circumstances, legal ignorance that results from that impediment.

Here, the district court did not analyze the present situation through the lens of *Estremera*, but we cannot say that this omission was fatal. Mr. Famous simply did not make an adequate showing that the library at GBCI had created an

---

[19] *Estremera v. United States*, 724 F.3d 773, 776 (7th Cir. 2013) involved a request for *access* to a prison library. Our case might well be characterized as involving the *adequacy* of the prison's library resources. However, our approval of *Egerton v. Cockrell*, 334 F.3d 433, 438 (5th Cir. 2003), a library adequacy case and *Whalem/Hunt v. Early*, 233 F.3d 1146, 1147 (9th Cir. 2000) (en banc), also a library adequacy case, confirms that both accessibility and adequacy cases are subject to the same analysis. *See Estremera*, 724 F.3d at 777.

impediment to his filing a timely petition. After Mr. Famous filed his petition, the State raised in its response the statute of limitations defense. Replying to the State's submission, Mr. Famous simply stated that GBCI "did not provide a copy of the AEDPA's time limitations."[20] He further asked that he be permitted to engage in discovery to show that the "law library did not contain a copy of the AEDPA's time limitations during [his] appeal process."[21]

Even when we take into consideration his pro se status at the time, Mr. Famous's terse allegation is insufficient to raise the defense that an "impediment created by State action in violation of the Constitution or laws of the United States" prevented his filing a petition in a timely manner.[22] At the time that he asserted this defense, Mr. Famous certainly could have provided sufficient additional information that would have assisted the district court in determining whether he had faced a state-created impediment. But his reply lacks any such information. He gave no description about the nature or extent of his alleged deprivation. He left the district court to guess as to whether he was complaining that the State did not take the initiative in supplying him with such a copy, whether

---

[20] R.53 at 15.

[21] *Id.* at 16.

[22] Like pro se complaints, pro se habeas petitions must be construed liberally. *See Frazier v. Varga*, 843 F.3d 258, 262–63 (7th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But even with this liberal construction, pro se litigants still must offer an articulable basis for disturbing the district court's judgment. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

he ever asked for a copy, or whether the law library, although making the statutory provision available for him to read, simply did not provide a copy. He simply provides no information about his interaction with state employees at the prison on this subject, assuming that there was some interaction.

Given the paucity of factual narrative as to information that was within Mr. Famous's knowledge, the district court was entitled to treat this allegation as legally insufficient to sustain an assertion that the State had created a constitutional impediment to a timely filing.[23] Moreover, Mr. Famous's laconic allegation, unaccompanied by information that the district court could reasonably expect to be within his knowledge, did not, moreover, provide the district court with sufficient information to permit it to make a reasoned judgment on the appropriateness of discovery or the permissible scope of that discovery.[24] Therefore, the district court did not abuse its discretion by not applying statutory tolling.

---

[23] Although Mr. Famous's petition was verified under oath, the reply, submitted much later, was not. It therefore cannot constitute a sworn affidavit. As we note in the text, moreover, such affidavit would be an insufficient allegation of a state-created impediment to filing a timely petition.

[24] "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). "Rule 6(a) [of the Rules Governing § 2254 Cases] makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court." *Id.* at 909. To satisfy the two requirements of the Rule 6(a) test, a petitioner must: "(1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show 'good cause' for the discovery." *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004). "'Good cause' exists when the facts

## B.      Equitable Tolling

### 1.

Mr. Famous also submits that his petition is not barred be-cause a combination of three factors entitles him to equitable tolling. Specifically, Mr. Famous submits that several "ex-traordinary circumstances" required the application of equi-table tolling or at least an evidentiary hearing to explore the underlying circumstances.

Mr. Famous first claims that he is entitled to equitable toll-ing because his appellate counsel retained his case file after the Wisconsin Supreme Court denied his petition for review on November 27, 2001. Mr. Famous claims that he made many attempts to obtain the file but did not receive it until June 28, 2005. He further states that, after he finally received the file from his former counsel, he gave it to a so-called "jailhouse lawyer" in July 2005 in an effort to seek assistance in filing his petition. He then alleges that prison authorities confiscated the file when they transferred the jailhouse lawyer to another institution and that, despite his best efforts, he was unable to retrieve the file from authorities until April 2007. Finally, Mr. Famous submits that his chronic mental health problems justify the invocation of equitable tolling.

In its memorandum order dismissing Mr. Famous's peti-tion, the district court addressed each of Mr. Famous's con-tentions.

---

alleged, if fully developed, may entitle the petitioner to relief. The factual allegations, however, must not be speculative or conclusory because dis-covery is not intended to be a fishing expedition." *Higgason v. Lemmon*, 6 F. App'x 433, 436 (7th Cir. 2001) (cleaned up).

With respect to the retention of the case file by appellate counsel, the district court simply pointed out that, even assuming the veracity of Mr. Famous's allegations, he still had not established that he had diligently pursued his rights once he was in possession of the file. Rather, the court simply remarked that, here, such a retention, assuming that it had occurred, was not outcome-determinative because Mr. Famous had not acted with reasonable diligence when he had possession of the file.

Addressing Mr. Famous's turning the file over to the jailhouse lawyer, the court took the view that Mr. Famous had to bear the responsibility for his loss of access because of that inmate's subsequent transfer. The court did not address whether Mr. Famous had made adequate efforts to retrieve the file once it was seized by prison authorities.

Finally, after examining the medical records submitted by Mr. Famous, the district court determined that, although there was no question that Mr. Famous suffered from mental illness (and suffered from such an illness even prior to his incarceration), there was no evidence that he lacked the capacity to address his legal rights during the period in question.

Because there was no evidence that Mr. Famous had acted diligently even when he had possession of his file and because the record did not support a finding that he was incapacitated due to his mental illness, the district court concluded that the invocation of equitable tolling was not appropriate.

**2.**

We review the district court's decision not to apply equitable estoppel for abuse of discretion. *Mayberry v. Dittmann*, 904 F.3d 525, 530 (7th Cir. 2018). In the course of our

evaluation, we must accept the factual findings of the district court unless they are clearly erroneous.[25]

Although a district court's equitable decisions must be governed by rules and precedents, it also must be sensitive in applying those principles to hardships caused by unique and unforeseen circumstances. As the Supreme Court noted in *Holland v. Florida*, 560 U.S. 631, 650 (2010), "courts of equity can and do draw upon decisions made in similar situations for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." In *Socha*, we stressed that this approach requires that a district court assess the totality of the circumstances facing the petitioner. 763 F.3d at 686.[26]

A petitioner is eligible for equitable tolling only when he demonstrates that, although he pursued his rights diligently, some "extraordinary circumstance" prevented his filing in a timely manner. *Id.* at 683; *see also Holland*, 560 U.S. at 649. The

---

[25] *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324 (2015) ("Federal Rule of Civil Procedure 52(a)(6) states that a court of appeals 'must not set aside' a district court's 'findings of fact' unless they are 'clearly erroneous.'") (cleaned up).

[26] Mr. Famous suggests that the district court did not view the circumstances in their totality. *See* Appellant's Br. 19. Because, with the exception of Mr. Famous's mental condition, the situations at issue here occurred at different times, the district court necessarily addressed each situation separately. We do not believe that, on the facts of this case, the district court's format evinces any lack of appreciation of the need to view the record as a totality.

petitioner has the burden to establish both requirements. *Socha*, 763 F.3d at 683.

In *Socha*, we held that failure to return a file to a client at the termination of representation, at least when the client needed the file for further proceedings, is not the sort of "garden variety" attorney negligence incapable of supporting equitable tolling. *Id.* at 686. But when a petitioner entrusts his court papers to another prisoner, the petitioner continues to bear the responsibility for any delay in filing. *See Paige v. United States*, 171 F.3d 559, 561 (8th Cir. 1999) ("No affirmative misconduct on the prison's part lulled [the petitioner] into inaction."). Thus, Mr. Famous entrusted the jailhouse lawyer "with his legal documents at his peril." *United States v. Cicero*, 214 F.3d 199, 205 (D.C. Cir. 2000) (finding no equitable tolling was warranted where the petitioner gave his legal files to a jailhouse lawyer whose placement in segregation resulted in the loss of the files).

Like the district court, we assume that equitable tolling might be available for the period when Mr. Famous alleged that his appellate attorney had withheld his case file. However, even indulging in the assumption that Mr. Famous did not receive his file until June 2005, the record establishes that he did not proceed with diligence when the file was within his control. The court reasoned that, at bottom, Mr. Famous simply had not acted diligently to initiate habeas proceedings when he did have possession of his file.

Upon receipt of his file, Mr. Famous quickly gave it to a jailhouse lawyer in July 2005 where it was then confiscated by prison authorities. While we agree with the district court that Mr. Famous must bear responsibility for the time the file was in the hands of the jailhouse lawyer, we need not decide on

this thin record whether the circumstances justified the State's refusal to return the files once they were in the State's custody and the State knew that Mr. Famous needed them. *See generally Cicero*, 214 F.3d at 204 (noting that the petitioner in that case had never asked prison officials to return the papers from which he was separated during a lawful prison transfer). It is sufficient to say that the district court was correct to hold that, despite these problematic time periods, Mr. Famous still had adequate time when he *was* in control of his file and did not diligently pursue his legal rights.[27]

Finally, Mr. Famous's contention that his mental illness should excuse his delay is also insufficient. Mr. Famous invites our attention (as he did the district court's) to the chronic mental illness that afflicted him throughout this period and, indeed, earlier in his life. In the district court, he produced medical documentation of his illness. The district court examined this material and Mr. Famous's claim that he suffers from "several severe disorders, including delusional disorder, paranoid personality disorder, and depressive disorder, that cause [him] to lose touch with reality."[28] The court concluded that the records did not support Mr. Famous's assertion that his mental illness was sufficient to warrant equitable tolling during the period when he had control of his files. The court noted that, although the medical records established that Mr. Famous had a "long [history] of psychotic symptoms and delusional beliefs," it also recites that, in 2009, his thought

---

[27] Following the return of his file from the jailhouse lawyer, Mr. Famous remained in control of his file from 2007 to 2010 when he filed his federal petition.

[28] R.65 at 7.

processes were "well-organized" and that his functioning was not "noticeably impaired."[29]

At one point in its discussion of the psychiatric evidence, the court recited that one clinician had remarked that Mr. Famous "himself does not believe he has any type of mental health issue."[30] Read in context, however, it is clear that the clinician made this statement to support the view that Mr. Famous's failure to recognize his problem contributed to a poor prognosis for improvement. Non-recognition by the patient is a factor that makes "delusional disorders refractory to treatment."[31] This subsidiary observation by the court therefore has no support in the record and is clearly erroneous. But on examination of the entirety of the district court's analysis of the clinician evidence, it is clear that this misstep did not play a fundamental role in the district court's assessment of the record as to undermine its ultimate conclusion that "there [was] no evidence that [Mr. Famous] was incapable of acting upon his legal rights during the limitations period."[32] A court abuses its discretion "when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004). Here, the district court's decision was not premised on its misunderstanding of Mr.

---

[29] *Id.* at 8 (alteration in original) (citations omitted).

[30] *Id.* (citing to R.53-1 at 27).

[31] R.53-1 at 27.

[32] R.65 at 8.

Famous's prognosis, nor did it solely rely on its erroneous interpretation of the clinician's statement. We "can say 'with fair assurance' that the judgment was not 'substantially swayed by the error.'" *United States v. Robinson*, 724 F.3d 878, 888 (7th Cir. 2013) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). Instead, the district court looked at all of Mr. Famous's submitted medical records and properly concluded that none of them suggested he was incapable of filing a petition over the more than eight-year time period. Indeed, the same clinical evaluation that renders the poor prognosis for delusional disorder also supports the district court's conclusion.[33]

We have examined the medical reports submitted by Mr. Famous and evaluated by the district court in the course of making its decision. The determination of the district court finds significant support in the record. Although the medical documents do indicate that Mr. Famous suffers from a chronic mental illness, the district court certainly was entitled to conclude that his affliction did not impair his ability to file a petition during the limitations period.

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED

---

[33] The clinician noted the following about Mr. Famous's mental status: "His thought process was well-organized and did not show signs of loose associations … or derailment that would be characteristic of thought disorder/psychosis." R.53-1 at 26.