In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1733

THOMAS SOCHA,

*Petitioner-Appellant*,

*v.*

WILLIAM POLLARD,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-CV-00994—**Rudolph T. Randa**, *Judge.*

ARGUED JANUARY 15, 2010—DECIDED SEPTEMBER 3, 2010

Before WOOD, EVANS, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.*   After the Supreme Court of Wisconsin declined to review his conviction for first degree homicide, Thomas Socha attempted to file a petition for a writ of habeas corpus in federal court. Seeking a lawyer, Socha tried first to enlist the help of the Wisconsin Innocence Project. Though the Project initially informed Socha that it would consider taking his case, almost a year later it told Socha that it

could not offer any assistance. Left to his own devices, Socha struggled to review the voluminous record in his case and tried his best to master the complexities of federal habeas corpus. This already-difficult task was made harder by the fact that Socha was in the segregation unit; as a result, he had access to the law library for only a few hours a month.

Having made little progress on his *pro se* petition and mindful that the deadline for commencing his case was fast approaching, Socha filed a motion on July 15, 2008, with the District Court for the Eastern District of Wisconsin, requesting a 90-day extension of the one-year limitations period set out in 28 U.S.C. § 2244(d). This was before the deadline, but only by a single day. A few months later, Judge J.P. Stadtmueller granted the *ex parte* motion on the ground that Socha's restricted access to the library had created an impediment to filing that was outside his control.

Socha filed his petition for habeas corpus within the period specified in Judge Stadtmueller's order, on November 19, 2008. At that point, however, the case was assigned to Judge Rudolph Randa, who dismissed the petition as untimely. Judge Randa took the position that Judge Stadtmueller's order extending the limitations period was an impermissible advisory opinion and thus of no effect, because the court issued the order before Socha had filed his petition. Judge Randa also concluded that there was no evidence of extraordinary circumstances that would warrant equitable tolling of the limitations period.

We granted Socha's request for a certificate of appealability and now vacate the district court's judgment, based on our conclusion that Judge Randa assumed too quickly that Socha's petition was untimely. We remand the case for further proceedings consistent with this opinion.

**I**

On November 20, 2001, three men brutally murdered Lance Leonard and buried him in a shallow grave near the woods in Crandon, Wisconsin. Police traced the crime back to the three killers and two others, Beth Mrazik and Thomas Socha, who were not present that night. Mrazik and two of the killers entered into plea agreements and testified against Socha at his trial. Each of them said that Socha played a part in planning Leonard's murder. Socha was anxious to get Leonard out of the picture, they asserted, because he feared that Leonard might implicate him in a fraudulent check scheme or reveal that he had stolen $12,000 to $16,000 of his drug supplier's cocaine.

According to Mrazik, as the police drew closer to cracking the case, Socha threatened that the Mafia would go after her if he were connected to the murder plot. When the police eventually did catch Socha, he dug himself into an even deeper hole. He asked them if the authorities had picked up Mrazik, since she knew all about the murder. While he questioned why he was being charged with homicide, he commented that he did not have "any problem being charged with party to a crime."

After a bench trial, Socha was convicted of first-degree intentional homicide. He appealed and, as permitted by Wisconsin law, filed a motion at the same time requesting post-conviction relief. In these two filings, he pressed a number of different theories, including insufficiency of the evidence, ineffective assistance of counsel, and prosecutorial misconduct. The Wisconsin Court of Appeals was unmoved by any of these points and affirmed, and on April 17, 2007, the Supreme Court of Wisconsin denied further review.

At this point, Socha elected not to file a petition for *certiorari* with the Supreme Court of the United States, and he also eschewed any further state-court remedies. Instead, he turned his attention to federal habeas corpus relief. As a state prisoner, Socha was allowed one year from the date when his conviction became final to file his federal habeas corpus petition. 28 U.S.C. § 2244(d)(1)(A). Once the 90-day deadline for applying for *certiorari* passed, the time for seeking direct review of Socha's conviction came to a close and that one-year period began to run. *Id.* In concrete terms, this meant that Socha had until July 16, 2008, to file his petition.

Over the course of that year, Socha confronted a number of obstacles that delayed his filing. For much of the year, he thought that the Wisconsin Innocence Project was going to represent him, but shortly before the original deadline, it informed him that it could not take the case. Socha's efforts to proceed *pro se* while he waited to hear from the Project were hindered by his placement on April 15, 2008, in prison segregation.

Prisoners in segregation may visit the prison law library. Access to the prison law library for inmates in segregation is limited to one 40-minute period once a week, or an 80-minute period once every two weeks.

Apparently recognizing that the deadline for his habeas petition was imminent, Socha initiated a miscellaneous action in the Eastern District of Wisconsin on July 15, 2008, through a motion requesting a 90-day extension of the due date for his petition. In the motion, Socha contended that he needed additional time since he was unfamiliar with federal habeas corpus law, had restricted access to the law library, and had only recently been told that he would be unable to get assistance from the Wisconsin Innocence Project. The court took no immediate action on the motion. Anxious to learn about the status of his motion, Socha filed a letter with the court requesting an update on August 11, 2008.

On September 19, 2008, Socha got his answer. Judge Stadtmueller issued an order granting him an additional 90 days, which pushed back the deadline until December 19, 2008. The judge reasoned that the extension was warranted because "Socha's segregated status limiting access to the prison law library appears to have created an impediment to his ability to file his petition on time. Socha's limited access to the library also appears to be beyond his control."

As the 90-day period was drawing to a close, Socha filed another motion requesting more time to collect additional documents relating to his case. Judge William

Griesbach denied that motion on October 20, 2008. This meant that Socha had to meet the deadline set by Judge Stadtmueller; he did so, actually filing the petition a month before it was due, on November 19, 2008. His petition asserted, among other things, that the state prosecutors had failed to disclose exculpatory evidence and the representation afforded by his attorneys was ineffective.

The district court, now acting through Judge Randa, denied Socha's petition on the ground that it had been filed outside the year-long limitation period established in § 2244(d). Despite the fact that Judge Stadtmueller had ruled otherwise, Judge Randa held that none of the hardships Socha had encountered in meeting the deadline warranted equitable tolling. Moreover, he reasoned that Judge Stadtmueller's order was not entitled to any weight whatsoever because there was no case or controversy pending in the federal court at the time Socha filed his request for an extension. This meant, Judge Randa thought, that Judge Stadtmueller lacked jurisdiction over the case and the order was a nullity.

## II

On appeal, Socha challenges the district court's dismissal of his petition. He argues that the district court erred when it chose to disregard Judge Stadtmueller's order. At the very least, the confusion created by this order, Socha asserts, justifies equitable tolling of § 2244(d)'s limitations period. While we typically review the denial

of a habeas corpus petition *de novo*, *Smith v. McKee*, 598 F.3d 374, 381-82 (7th Cir. 2010), a decision to deny equitable tolling is reviewed for an abuse of discretion, *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010).

The heart of this matter is whether Judge Randa correctly concluded that he was compelled to dismiss Socha's petition as untimely. This conclusion was strongly influenced by his characterization of Socha's July 15 filing and Judge Stadtmueller's disposition of that motion. If that order represents a mere advisory opinion not addressed to resolving a "case or controversy," then it marks an attempted exercise of judicial authority beyond constitutional bounds. U.S. CONST. art. III, § 2. Our first order of business is therefore to ascertain whether Socha's pre-filing request for an extension of the limitations period presented Judge Stadtmueller with a live controversy. Siding with the Second Circuit, the district court answered in the negative, explaining that any order issued would be advisory since no habeas corpus petition was pending at the time Judge Stadtmueller ruled. *United States v. Leo*, 203 F.3d 162, 164 (2d Cir. 2000); see also *Mulholland v. Hornbeck*, 2008 WL 4554780, at *3 (C.D. Cal. Oct. 8, 2008); *Pounds v. Quarterman*, 2008 WL 1776456, at *1 (N.D. Tex. Apr. 14, 2008).

Our case is different from *Leo* in precisely the respect that concerned the Second Circuit: the existence, or lack thereof, of a petition for a writ of habeas corpus before the court. In *Leo*, no such petition had been filed; in contrast, by the time Socha's case reached Judge Randa, and certainly by now, that step has been taken. We

thus have no need to decide whether we might have entertained an appeal had Socha filed one before he presented his petition to the district court, and we are free to reach the difficult characterization question that this case presents. If this is properly viewed as an effort by Judge Stadtmueller to extend a strict, statutorily mandated filing deadline, then we know from *Bowles v. Russell,* 551 U.S. 205 (2007), that such an action lay beyond the district court's power. In *Bowles,* a district court judge purported to extend a party's time for filing an appeal beyond the period authorized by 28 U.S.C. § 2107 and Federal Rule of Appellate Procedure 4(a)(1)(A). The party filed beyond the statutory period, but within the time allowed by the district judge, but the Supreme Court held that this was too late. That statutory period was jurisdictional, it held, and the district court had no power to override the statutory limitations on appeal. *Id.* at 213. The Court also held that it could not excuse Bowles's late filing on the basis of any "unique circumstances" doctrine that the lower courts had been following, "because this Court has no authority to create equitable exceptions to jurisdictional requirements." *Id.* at 214.

We might have followed this reasoning had the Supreme Court not, after *Bowles,* addressed the limitations period governing Socha's case and held that it is subject to equitable tolling. *Holland v. Florida,* 130 S. Ct. 2549 (2010). In sharp contrast to the statute at issue in *Bowles,* which the Court described as "mandatory and jurisdictional," 551 U.S. at 209, the statute applicable to Socha's case, 28 U.S.C. § 2244(d), was described in *Holland* as follows:

> [T]he AEDPA statute of limitations defense is not jurisdictional. It does not set forth an inflexible rule requiring dismissal whenever its clock has run.

130 S. Ct. at 2560 (internal quotation marks and citations omitted). Logically, this suggests that an order accepting a filing after the limitations period has run is not beyond the power of the district court. Instead, it is effective if it can meet the standards for equitable tolling that the Court described in *Holland*.

This makes sense when we step back and look at habeas corpus more broadly. In a number of ways, the federal petition represents one step in an integrated criminal process. Repeatedly through 28 U.S.C. § 2254, Congress has emphasized the close relation between the state court proceedings that the petitioner wishes to challenge and the federal collateral proceeding. Thus, for example, § 2254(b)(1)(A) requires a person in custody "pursuant to the judgment of a State court" who is seeking a writ of habeas corpus to "exhaust[] the remedies available in the courts of the State." An application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless one of two exceptions applies. *Id.* § 2254(d). The state court's determination of factual issues "shall be presumed to be correct." *Id.* § 2254(e)(1). And finally, 28 U.S.C. § 2244(d)(1) provides that a one-year period of limitation "shall apply to an application for a writ of habeas corpus" by a state prisoner. That one-year period is typically measured from the date when the state courts are finally

finished with the case, although there are some exceptions to that rule that do not apply here. Computation of the time within which a petition under § 2254 must be filed follows the same pattern as it does for other kinds of review proceedings. The date when the petition is due is a function of when the earlier tribunal wrapped up its work.

Although there were good reasons here for Judge Randa to be concerned about the *ex parte* nature of Socha's July 15 motion, he put too much weight on the fact that it was filed before Socha's completed petition. First, there is no absolute bar imposed by Article III on judicial actions closely connected with a case or controversy that has not yet been filed. Perhaps the best-known example of a court's taking action with respect to a case that has yet to be filed comes in Federal Rule of Civil Procedure 27, which permits depositions to perpetuate testimony. The Wright, Miller & Marcus treatise describes the nature of a Rule 27 action as follows:

> A proceeding to perpetuate testimony is not based on a pending action nor is it a separate civil action in the usual sense. It has been described as "an ancillary or auxiliary proceeding to prevent a failure or delay of justice," and there need not be an independent basis of federal jurisdiction for the proceeding to perpetuate. It is enough to show that in the contemplated action, for which the testimony is being perpetuated, federal jurisdiction would exist and thus it is a "matter that may be cognizable in any court of the United States."

8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2072 at 388 (3d ed. 2010) (citations omitted). Rule 27 proceedings are similar to actions under 28 U.S.C. § 1782, which authorizes the federal courts to render assistance to foreign tribunals, "including criminal investigations conducted before formal accusation." *Id.* § 1782(a). In neither case does the court's power to act depend on the filing of a primary complaint. Rule 27 rests on equitable principles, insofar as it is designed to prevent a failure or delay of justice. *De Wagenknecht v. Stinnes*, 250 F.2d 414, 416 (D.C. Cir. 1957). Section 1782 recognizes that courts may be called upon to take action to assist another tribunal in moving forward with a case.

Second, it is possible to view a motion like Socha's as the actual petition for a writ of habeas corpus, filed in an incomplete form but with a promise to furnish supporting documentation later. See, *e.g., Smith v. Barry*, 502 U.S. 244, 248-49 (1992) (treating appellate brief as notice of appeal); *Listenbee v. City of Milwaukee*, 976 F.2d 348, 350-51 (7th Cir. 1992) (treating motion for extension of time as notice of appeal). No one disputes the fact that his petition would have been timely if July 15, 2008, was the date on which it was effectively filed.

All of this shows that the district court erred by focusing too closely on the fact that Socha had not already filed something that he had labeled as his petition. Not only does the motion anticipate an imminent action in which Socha and the state will be adverse, but also the parties have opposing interests on the immediate question, whether to toll the statute of limitations. As

Judge Stadtmueller's order shows, the facts relating to equitable tolling were before the court. Thus, Socha's ancillary proceeding satisfied the traditional standing requirements of injury-in-fact, causation, and redressibility. *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004).

The district court also should have considered whether the state should be equitably estopped from invoking the one-year limitations period under the circumstances presented here. Socha informed the court on several occasions that he was trying, or had tried, to file on time, but he was hindered by the adverse party (the warden). Even before the Supreme Court's decision in *Holland*, we had not closed the door on the possible applicability of doctrines such as equitable tolling and equitable estoppel. See, *e.g., Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). In *Holland*, the Court confirmed that equitable tolling is available for cases governed by § 2244(d)'s filing periods. 130 S. Ct. at 2562 (explaining that a habeas corpus petitioner is "entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing") (internal quotation marks and citations omitted). We see no reason why, in an appropriate case, equitable estoppel would not also be available. The district court refrained from addressing Socha's equitable argument in any detail, apparently believing that Socha could not reasonably have relied upon a jurisdictionally void order extending the filing deadline. Now that these concerns have been resolved, we believe that it is best for the district court to take another look at Socha's petition

from the various perspectives we have discussed. Our belief that the district court is best situated to make this determination is reinforced by *Holland*, which urged courts acting in this highly fact-dependent area to employ flexible standards on a case-by-case basis. *Id.* at 2563-64.

Socha still faces significant hurdles on remand. While he filed his request for a extension of time before the deadline, Judge Stadtmueller did not issue his ruling until well after the deadline had passed. As we noted earlier, this poses a problem only if Socha's July 15 filing cannot serve as the petition itself. If it cannot, however, then Socha is in a difficult position. He was rolling the dice: he might have thought that all would be well if the district court granted his extension, but for all he knew, the court might have denied the July 15 request long after the original deadline expired. At that point, he would have been left with the same equitable tolling and estoppel arguments that we have already discussed. These facts may cause the district court to question Socha's diligence. But the district court should also keep in mind the flexibility that is often appropriate for *pro se* litigants, who are likely not well versed in complex procedural rules. See, *e.g.*, *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

\* \* \*

We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.