In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1598

THOMAS R. SOCHA,

*Petitioner-Appellant,*

*v.*

GARY A. BOUGHTON, *Warden,*

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cv-994 — **Rudolph T. Randa**, *Judge.*

ARGUED APRIL 7, 2014 — DECIDED AUGUST 14, 2014

Before WOOD, *Chief Judge*, and KANNE and SYKES, *Circuit Judges*.

WOOD, *Chief Judge*. This is the second time we have been asked to consider Thomas Socha's struggle to have his federal habeas corpus petition heard on the merits. When we first considered Socha's case in 2010, we held that the district court was not compelled to dismiss his petition for missing the deadline established by the Antiterrorism and Effective Death Penalty Act (AEDPA). See *Socha v. Pollard*, 621 F.3d

667 (7th Cir. 2010) *(Socha I)*. We sent the case back to the district court with instructions to evaluate several theories under which Socha's action would be timely: whether the motion to extend time that Socha filed might serve as the petition itself; whether the deadline should have been equitably tolled in light of the obstacles to Socha's filing and the district court's initial grant of his motion to extend the deadline; or whether the state should be equitably estopped from asserting a timeliness defense.

The district court rejected each of these possibilities on remand. It reasoned that Socha's motion could not be construed as a petition for a writ of habeas corpus because it did not offer any grounds for relief from his conviction; it denied equitable tolling based on a finding that Socha had not been diligent in pursuing his rights; and it found equitable estoppel unwarranted because the state had not placed intentional barriers in the way of Socha's petition.

We again granted Socha's request for a certificate of appealability. Although we see no reversible error in the court's first and third rulings, we conclude that it abused its discretion when it rejected Socha's equitable tolling argument. We do not make such a decision lightly, but given the unusual obstacles that confronted Socha in filing his petition, his repeated attempts to obtain his record and comply with the deadline, and the district court's initial grant of a motion to extend the deadline, we are convinced that equity requires his failure to file a completed petition before the deadline to be forgiven. Accordingly, we reverse the judgment of the district court and remand Socha's petition for further proceedings consistent with this opinion.

**I**

As we explained in our earlier opinion, Socha was convicted of first-degree intentional homicide after a bench trial in 2002. See *Socha I*, 621 F.3d at 668. He simultaneously proceeded with his direct appeal and filed for state post-conviction relief, as is permitted under Wisconsin law. The Wisconsin Court of Appeals affirmed his conviction, and the Supreme Court of Wisconsin denied further review on April 17, 2007.

Socha chose not to pursue a petition for a writ of *certiorari* in the U.S. Supreme Court from the state supreme court's decision. Instead, he turned immediately to a petition under 28 U.S.C. § 2254 in the federal district court. Under AEDPA, he had one year from the date his conviction became final to file his federal habeas corpus petition. 28 U.S.C. § 2244(d)(1)(A). The point from which that one year runs, however, varies. For a state prisoner who does not seek collateral relief, it runs from the date when the judgment becomes final by the expiration of the time for seeking direct review. See 28 U.S.C. § 2244(d)(1) ("The limitation period shall run from the latest of … .") As we discuss in more detail below, that time includes the period during which the state prisoner is seeking a writ of *certiorari* in the U.S. Supreme Court (or the disposition of any petition that actually is filed). AEDPA further suspends the running of that one year for state prisoners who seek state collateral relief. See 28 U.S.C. § 2244(d)(2). That suspension lasts, however, only for the period when the state courts are considering the case; it does not include the time during which *certiorari* may be sought in the U.S. Supreme Court (or, if sought, ruled upon). See *Lawrence v. Florida*, 549 U.S. 327, 332 (2007). The latter

rule is different for federal prisoners who seek collateral re-
lief. See *Clay v. United States*, 537 U.S. 522, 525 (2003).

Because of a quirk of Wisconsin procedure, the Wiscon-
sin courts may conduct direct review of a conviction simul-
taneously with a post-conviction petition. That is what hap-
pened in Socha's case. But the existence of the post-
conviction aspect of the case does nothing to detract from
the rule found in section 2244(d)(1), under which the limita-
tion period applicable to a petitioner such as Socha does not
*begin* to run until the date his judgment becomes final by the
expiration of time for seeking direct review (including *certio-
rari*). See 28 U.S.C. § 2244(d)(1) ("The limitation period shall
run from the latest of … ."); *Lawrence,* 549 U.S. at 333 (quot-
ing *Clay,* 537 U.S. at 528 n.3) (stating that the direct review to
which section 2244(d)(1) refers includes the time for seeking
*certiorari*).

In Socha's case, the only point to make about sec-
tion 2244(d)(2) is that it never came into play. It could not
extend the date on which his time to file began to run be-
yond what section 2244(d)(1) provided—90 days after the
Wisconsin Supreme Court denied review—because it did
not follow the direct-review phase of the case. But the fact
that it was proceeding simultaneously with direct review
does not mean that it somehow deleted time to which Socha
was otherwise entitled under section 2244(d)(1). Under that
provision, Socha's one-year period started on the date on
which he could no longer seek *certiorari* on his direct appeal:
July 16, 2007.

Socha's efforts to file a petition within one year of that
date were hampered at every turn, through no fault of his
own. Many of the problems he encountered stemmed from

his inability for more than a year despite persistent requests to obtain his case file from the public defender who had represented him at trial, Joseph Sommers. The lack of access to his file seriously impeded his ability to raise the two arguments he wished to press: ineffective assistance of counsel and withholding of exculpatory evidence. Effectiveness of counsel is something that must be evaluated on the basis of the record as a whole. See *Rompilla v. Beard*, 545 U.S. 374, 393 (2005) (prejudice aspect of ineffectiveness of counsel evaluated on record as a whole); *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003). A claim under *Brady v. Maryland*, 373 U.S. 83 (1963), similarly requires an evaluation of the record as a whole. See, *e.g., Banks v. Dretke*, 540 U.S. 668, 691 (2004) ("[T]he three components or essential elements of a *Brady* prosecutorial misconduct claim [are] … [t]he evidence at issue must be favorable to the accused … ; that evidence must have been suppressed by the State … ; and prejudice must have ensued."). Prejudice exists if the suppressed evidence was material, *id.*, and materiality requires an assessment of the entire record, *id.* at 698. All of this is to say that without his file, Socha had no hope of raising a plausible argument on either ground.

Socha first wrote to Sommers on May 4, 2007, to ask that his case file be sent to his sister, Barbara Putnam. (By then, Sommers was no longer representing him.) Socha wrote again withdrawing that request on July 3, explaining that he was seeking representation from the Wisconsin Innocence Project. He anticipated that it would be easiest for the Project to pick up the record directly from Sommers's office, should it choose to represent him. On July 9, he wrote to the Innocence Project and asked it to take up his case.

After hearing nothing from either Sommers or the Innocence Project for two months, Socha wrote again to Sommers on September 16 and reinstated his earlier request that Sommers send his case file to Putnam. Sommers never acknowledged the letter. Socha wrote again on February 19, 2008, with another plea for the file. Perhaps sensing that time was running out, Socha sent off another letter to Sommers on March 8, this time directing Sommers to send his case file directly to him at the Green Bay Correctional Institution, where he was serving his sentence. The silence continued.

Fed up, Socha next wrote directly to Kenneth Lund, the Attorney Manager at the Office of the State Public Defender; Lund wrote a letter to Sommers on April 11 reminding him that Socha was entitled to his case file. This intervention spurred Sommers to take a rather bizarre action: he sent a letter to Putnam on April 29 indicating that he would make the file available to her, but only at his home rather than his office, "to make things more convenient." He did so in the face of Socha's explicit directive to send the file directly to him in the prison rather than to Putnam, and despite the fact that Putnam had not been involved in any of the correspondence between Socha, Sommers, and Lund. Putnam did not respond to Sommers's letter.

With his file still held hostage at his former attorney's office, Socha began to look for alternative ways to complete a habeas corpus petition. He found another inmate, Ronald Wagner, who was willing to help. Wagner wrote to the clerk of the Forest County Circuit Court on April 25 and requested court files from both Socha's case and those of his co-

defendants. He also requested transcripts in June; they drift-
ed into Socha's possession in September.

In mid-May the Wisconsin Innocence Project wrote to So-
cha to inform him that it had chosen not to represent him.
That same month, Socha again wrote to Lund and asked that
the case file be sent directly to the prison. This time, Lund
took matters into his own hands, found the file, and mailed
it to Socha; on June 6, 2008, Socha received two boxes con-
taining his case materials. They were in such disarray, he
said, that "it was like someone threw them up in the air in a
windstorm."

At the time Socha received his file, he was being held in
administrative segregation within the prison. This prevented
him from using its main law library; he was relegated in-
stead to the "Segregation Law Library." According to Socha,
the entire "library" consisted of two computers with spotty
internet access. The computers were shared by 250 inmates.
Socha was allowed to visit this room for 80 minutes every
two weeks. He could not bring legal materials back to his
cell because he was unable to pay for photocopies. The pri-
son's logs show that Socha used the Segregation Library
several times in May, once in June, and not at all in July, but
he contends that the prison keeps records only of those times
a prisoner was granted access to the library and not when a
request was denied. Socha further alleges that prison offi-
cials would not grant him priority access to the library be-
cause no court document explicitly showed that he had a
pending filing deadline.

At any rate, Socha realized that he was not going to be
able to meet his July 16, 2008, filing deadline. On July 15,
2008, therefore, he filed a document in the Eastern District of

Wisconsin that he titled a "Motion to Extend Deadlines for Petitioner's Federal Habeas Corpus Petition 28 U.S.C. § 2254." That *ex parte* motion was assigned to Judge Stadtmueller, who on September 19, 2008, granted Socha an extra 90 days to file his petition and fixed a new deadline of December 19, 2008. Socha later filed another motion requesting more time to collect additional documents; that motion was denied by Judge Griesbach. Socha finally filed his petition on November 19, 2008, a month before the deadline imposed in Judge Stadtmueller's order. In it, as planned, he asserted claims of ineffective assistance of counsel and failure to disclose exculpatory evidence, among others.

The district court, now in the person of Judge Randa, denied Socha's petition on June 15, 2011, on the ground that it was untimely under 28 U.S.C. § 2244(d). Despite the fact that Socha had sought additional time before July 16, the fact that Judge Stadtmueller had *granted* his request for an extension, and the fact that he filed well within the new deadline, Judge Randa dismissed on the ground of untimeliness. He took the position that Judge Stadtmueller lacked jurisdiction to enter the order because no case or controversy was pending before the court when the motion was filed. He also disagreed with Judge Stadtmueller's decision on the merits.

On appeal from that order of dismissal, we reversed and remanded for reconsideration of the timeliness of Socha's petition. See *Socha I*, 621 F.3d at 673. Applying the Supreme Court's then-recent holding in *Holland v. Florida*, 560 U.S. 631 (2010), which held that the AEDPA statute of limitations defense is nonjurisdictional and therefore subject to equitable tolling, *id.* at 645, we concluded that the district court had acted too hastily in dismissing Socha's petition solely be-

cause it was filed more than one year after his conviction became final. We noted that there is nothing untoward about a motion filed in conjunction with a soon-to-be-launched habeas corpus petition. We then mapped out several possibilities for the court to consider on remand, any one of which would allow Socha to have his petition heard on the merits: that Socha's motion might be viewed as an incomplete but timely petition that could be supplemented later; that the statute of limitations should be equitably tolled; or that the State should be equitably estopped from asserting the limitations defense. *Socha I*, 621 F.3d at 671–72.

On remand, the district court held firm to its earlier decision. It held that Socha's pre-filing motion could not be construed as a petition because it omitted any grounds for relief and said nothing further about Judge Stadtmueller's action based on that motion. It declined to apply equitable tolling because it was not persuaded that Socha had been sufficiently diligent, and it found that equitable estoppel was inappropriate because the State had not acted intentionally to prevent Socha from filing on time.

## II

Before we turn to the district court's order, we must address two preliminary issues: why we have concluded that Socha's time to file started in July 2007; and whether, as the state argues, we lack jurisdiction because we somehow "relinquished the mandate" ten weeks before we granted Socha's certificate of appealability and abusively "recalled the mandate" when we granted the certificate of appealability.

*Time to File.* In *Lawrence v. Florida*, the Supreme Court considered the question "whether a state application is still

'pending' when the state courts have entered a final judgment on the matter but a petition for certiorari has been filed in this Court." 549 U.S. at 329. In a case involving state post-conviction relief, the Court held that it is not. It observed that a natural reading of 28 U.S.C. § 2244(d)(2), which addresses post-conviction or other collateral relief, shows that "the statute of limitations is tolled only while state courts review the application." *Id.* at 332. It then explained why in that circumstance the *certiorari* process falls outside that period:

> This Court is not a part of a "State's post-conviction procedures." State review ends when the state courts have finally resolved an application for state postconviction relief. After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open. And an application for state postconviction review no longer exists. All that remains is a separate certiorari petition pending before a *federal* court. The application for state postconviction review is therefore not "pending" after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1–year limitations period during the pendency of a petition for certiorari.

*Id.*

Direct review is another matter; if a person decides not to seek post-conviction relief, then the tolling afforded by section 2244(d)(2) never applies. A prisoner seeking federal habeas corpus relief immediately after direct review looks to section 2244(d)(1)(A) for the date on which his one-year period begins to run. That section refers to "the date on which the judgment [of the state court] became final by the conclu-

sion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The "time for seeking" direct review, the Court reaffirmed in *Lawrence,* "includes review by this Court." 549 U.S. at 333.

Wisconsin allows a criminal defendant to make a post-conviction motion immediately after sentencing. See Wis. Stat. Ann. §§ 809.30; 974.02. (A different statute, Wis. Stat. Ann. § 974.06, allows the filing of a motion for post-conviction relief after the time for appeal or post-conviction remedy under section 974.02 has expired, but only if the issue raised could not have been presented in a 974.02 motion. See *Wisconsin v. Escalona-Naranjo,* 517 N.W.2d 157, 159 (Wis. 1994).) That is how Socha wound up with a hybrid opinion from the Wisconsin Court of Appeals, the last state court to address the merits of his case. We see nothing in either the statute or *Lawrence* to suggest that the one-year period for seeking habeas corpus relief after direct review must be *shortened* just because the petitioner was simultaneously pursuing state post-conviction relief. The limitations period does not begin to run for any state prisoner until the time for direct review is complete. Since Socha did not pursue state post-conviction relief after his direct appeal became final, his time to file was governed by section 2244(d)(1)(A), which gave him until July 16, 2008.

*Mandate.* The other preliminary issue concerns our mandate—or it would, if this were anything but a frivolous argument from the state. We readily concede that it would indeed be problematic if we had acted on our own to recall the mandate, as the state says we did. The Supreme Court has said that "where a federal court of appeals *sua sponte* recalls its mandate to revisit the merits of an earlier decision deny-

ing habeas corpus relief to a state prisoner, the court abuses its discretion unless it acts to avoid a miscarriage of justice as defined by our habeas corpus jurisprudence." *Calderon v. Thompson*, 523 U.S. 538, 558 (1998). But that is not what happened in this case.

The confusion, to the extent that there was any, arose as follows. When the district court dismissed Socha's petition on remand, it initially granted his motion for a certificate of appealability—the critical document someone who wishes to appeal from the denial of a petition for a writ of habeas corpus must obtain, either from the district court or the court of appeals. See 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b). When that certificate arrived in this court, we vacated it in an order issued on January 20, 2012, because the district court had failed to indicate in what way Socha had made a substantial showing of denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004). On February 9, we issued an order declining to reconsider that decision. At that point, the case returned to the district court with the certificate of appealability vacated. No notice of appeal had ever been filed, and so jurisdiction over the case had never transferred to the court of appeals.

The ball was then back in the district court, which was free either to issue a new certificate of appealability that appropriately identified at least one substantial constitutional issue, or to deny the requested certificate. The district court chose the latter option and entered a second amended judgment on February 27 that dismissed the petition and denied a certificate of appealability. Socha then applied to this court for a certificate, and we granted it, recognizing that the same substantial constitutional issues that we identified as under-

lying his first appeal in 2010 (ineffective assistance of counsel and withholding of exculpatory evidence by prosecutors) are still present in the case and support the certificate.

If we were to accept the state's argument, the district court's amended judgment of February 27 would be unappealable, and the district court would stand as the final arbiter of Socha's case. That is not, however, what happens when this court takes the routine action of vacating a prior order or judgment of a district court and remanding for further proceedings. The certificate of appealability was properly granted and this case is properly before us.

### III

As we noted earlier, after taking a second look at the request for an extension of time that Socha filed on July 15, 2008, the district court concluded that it could not serve as the actual petition for a writ of habeas corpus. His document focused exclusively on the need for more time; it did not reveal any reasons justifying relief. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts sets forth a number of requirements for a petition. Among others, it must specify all the grounds for relief available to the petitioner and state the facts supporting each ground. We are satisfied that the district court's reading of Socha's July 15 document is a fair one, and that even a generous reading of this document falls so short of Rule 2(c) that it cannot be accepted as the petition itself. That disposes of the only theory under which Socha's petition might have been timely.

The district court also found that there were no grounds for equitably estopping the state from asserting a timeliness

defense. Equitable estoppel, it noted correctly, applies to a limitations period when a party takes active steps to prevent an adversary from suing on time. *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450–51 (7th Cir. 1990). The only active step to which Socha points, however, is the state's decision to place him in administrative segregation. (Socha also complains about his minimal access to the library, which is the kind of impediment that may also be analyzed under equitable estoppel. See *Estremera v. United States,* 724 F.3d 773, 777 (7th Cir. 2013).) Neither the segregation argument nor the library argument (if it is properly before us) is enough, however. As the district court pointed out, without some evidence that the officials who moved him to segregation or monitored his use of the library knew that they were impeding his effort to file a petition, it is impossible to characterize those moves as expressly designed to prevent a timely petition.

That leaves Socha's argument for equitable tolling. A petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation marks omitted). It is the petitioner's burden to establish both of these points. See *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). The realm of equitable tolling is a "highly fact-dependent area" in which courts are expected to employ "flexible standards on a case-by-case basis." *Socha I*, 621 F.3d at 672 (citing *Holland*, 560 U.S. at 650–52). That said, tolling is rare; it is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004) (internal quotation marks and alterations omitted).

The state suggests that equitable tolling is a chimera—something that exists only in the imagination. It asserts that we observed six years ago that we had never as of then approved equitable tolling of a habeas corpus petition. See *Tucker v. Kingston,* 538 F.3d 732, 734 (7th Cir. 2008). We are not free, however, to regard equitable tolling as something that exists in name only; this would render the Supreme Court's explicit approval of equitable tolling in *Holland* a nullity. See also *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013). We have properly enforced the high bar that the Court has erected in this area, but by the same token we have not set that bar so high as to make equitable tolling impossible. To the contrary, we recognize that its availability depends on the facts. For example, in *Davis v. Humphreys,* we held that mental incompetence could support equitable tolling of the section 2244(d) limitations period, and we remanded to the district court for a more nuanced evaluation of the petitioner's mental capabilities. 747 F.3d 497, 498–99 (7th Cir. 2014). In *Weddington v. Zatecky*, we stated that the intentional confiscation of a prisoner's habeas corpus petition and related legal papers by prison officials is extraordinary as a matter of law. 721 F.3d 456, 464–65 (7th Cir. 2013) (quoting *Valverde v. Stinson,* 224 F.3d 129, 133 (2d Cir. 2000)). We remanded in *Weddington* for further factual findings. *Cf. Carter v. Hodge*, 726 F.3d 917, 919 (7th Cir. 2013) (ordering equitable tolling of time under FED. R. APP. P. 4 for taking a criminal appeal where court erroneously told prisoner that final judgment had not yet been entered against him).

The question before us is not whether equitable tolling is a theoretical possibility for Socha; it is. The issue is whether, on these facts, the district court abused its discretion when it concluded that Socha failed diligently to pursue his rights

and that extraordinary circumstances did not prevent his timely filing.

A

We take up the question of extraordinary circumstances first, because Socha's diligence is best evaluated in light of that broader picture. Chief among these circumstances is Socha's lack of access to his legal file throughout almost the entire one-year period he had under the statute, until just a month before he asked the district court for help. When he received his file on June 6, 2008, he had only 40 days left to file. Socha had been begging Sommers for the file since May 4, 2007, less than three weeks after the Wisconsin Supreme Court turned down his petition for review. His ability to monitor his case was compromised by his segregated status in prison and his consequent limited access to the prison library. (Even if these circumstances are not enough to support equitable estoppel, they shed light on the question whether Socha was responsible for the delay or if instead he demonstrated the necessary diligence for equitable tolling.) The state quibbles over whether Socha was denied access on some occasions, but it has never contradicted Socha's contention that the most he could hope for was 80 minutes in the library every two weeks, and that he could not bring legal materials back to his cell for want of funds to make photocopies. Finally, it is worth noting that Socha was unrepresented for the entire period relevant to our inquiry. To the extent that this may have led him to err by filing only a motion for an extension of time just before his deadline rather than a full-blown petition, it was a pleading error that must be viewed favorably to him. *Cf. Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (*pro se* litigants are held to less

stringent standards than those with lawyers). And in any event, Socha's *pro se* status means that he cannot be held responsible for Sommers's tardiness in transmitting the file: counsel's misconduct is attributed to a client, but non-counsel's conduct is not.

The state tries to pick off each of the circumstances Socha identifies, explaining why in isolation it is not enough to justify equitable tolling. Incarceration alone, for example, does not qualify as an extraordinary circumstance. *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001). That would make no sense, since it is actually a requirement for habeas corpus relief that the petitioner be in custody. See 28 U.S.C. § 2254(a); see also *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam). Placement in administrative segregation alone is also not enough by itself; such a rule would hamstring a prison's ability to maintain order. See, *e.g.*, *Hizbullahankhamon v. Walker*, 105 F. Supp. 2d 339, 344 (S.D.N.Y. 2000), *aff'd* 255 F.3d 65, 75 (2d Cir. 2001). Like incarceration, however, segregation may serve as a piece of the puzzle. We are not worried that prisoners will vie to be put in segregation just so that they can secure extensions of the one-year limitations period.

Similarly, lack of representation is not on its own sufficient to warrant equitable tolling, nor is a petitioner's lack of legal training. Prisoners do not have a constitutional right to the assistance of counsel in post-conviction collateral attacks. See *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). We cannot give the label "extraordinary" to a trait that applies to 92 percent of prisoners filing petitions. See *Table C-13: Civil Pro Se and Non-Pro Se Filings, by District, during the 12-Month Period Ending September 30, 2013*, http://www.uscourts.

gov/uscourts/Statistics/JudicialBusiness/2013/appendices/C1
3Sep13.pdf (last visited Aug. 14, 2014). Nor is lack of legal
knowledge, another feature shared by the overwhelming
majority of prisoners, by itself enough to justify equitable
tolling. *Taylor v. Michael*, 724 F.3d 806, 811 (7th Cir. 2013).
The statutory deadlines would be meaningless if either of
these common problems were enough to override the nor-
mal rules.

Poor representation by an attorney calls for a more nu-
anced appraisal. Defects in performance, whether through
the attorney's own fault or attributable to extenuating cir-
cumstances, do not inevitably support equitable tolling, but
they are relevant. The Supreme Court has identified some
types of errors (such as miscalculation of a deadline) that do
not warrant relief; it calls them "garden variety" claims of
excusable neglect, meaning that these errors are too common
to be called "extraordinary." *Holland*, 560 U.S. at 651–52 (cit-
ing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).
An attorney's incapacity is also not necessarily a ground for
equitable tolling. *Modrowski v. Mote*, 322 F.3d 965, 968 (7th
Cir. 2003). The important thing is the full picture with which
an inmate is contending. Here, it is notable that Sommers
was not Socha's attorney for the period relevant to our in-
quiry; his representation terminated with the conclusion of
Socha's direct appeal, and thus he had no legal authority to
act on Socha's behalf. His failure to turn over Socha's file,
then, was not "garden variety" neglect of a client, but rather
a rarer instance where the materials necessary to conducting
one's legal affairs were being unjustifiably held by a person
who had no ability to use them. (Indeed, Sommers was on
thin ice ethically speaking, given Wisconsin Rule of Profes-
sional Conduct 1.16(d), applicable in the Eastern District of

Wisconsin, which requires a lawyer who has terminated representation to take reasonable steps to protect a client's interests, including specifically surrendering papers and property to the client.)

It does not matter that one could look at each of the circumstances encountered by Socha in isolation and decide that none by itself required equitable tolling. The mistake made by the district court and the state was to conceive of the equitable tolling inquiry as the search for a single trump card, rather than an evaluation of the entire hand that the petitioner was dealt. In *Holland,* the Supreme Court disapproved the use of such a single-minded approach. It wrote instead that a person's case is to be considered using a "flexible" standard that encompasses all of the circumstances that he faced and the cumulative effect of those circumstances. Similar cases may shed some light on the claim, but "courts exercise judgment in light of prior precedent … with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 560 U.S. at 650.

The hurdles Socha faced were nearly insurmountable, if he hoped by July 16 to create an adequate petition that met the criteria of Rule 2(c) of the habeas corpus rules. For nearly 90% of his allotted one year, Socha was without access to any of the documents pertaining to his legal proceedings through no fault of his own. He made repeated requests for the documents both to his former lawyer and eventually to that lawyer's superior. He tried to secure new counsel, who would have secured the documents for him. The district court faulted Socha for taking no alternative measures while his file languished in the possession of his former attorney,

but this conclusion is misguided. The state concedes in its brief that Socha began seeking alternative avenues to file for federal relief while he was still without his file; for example, he worked with inmate Wagner to obtain some documents directly from the state court. Even if he had not done so, it is unclear what more Socha could have done without access to his file. Even the most seasoned attorneys do not, and should not, draft motions, memoranda, or briefs without access to the basic files underlying the actions. They likely would face discipline if they attempted to reconstruct the case from memory alone. To expect Socha to have a photographic memory permitting him to write a petition without his file is unrealistic.

After Socha finally received his file, new obstacles stood in his way: limited library access and the rapid expiration of time. Even ignoring his allegations about the severe limitations on his library access and limiting our consideration to the uncontroverted facts (eighty minutes of access every two weeks, two computers for 250 inmates, and the inability to take legal materials back to his cell), it still would have been nearly impossible for Socha to review the disorganized file, gather background legal materials, and craft a meaningful petition before the deadline. (The state tells us that Socha was not in segregation for much of the year, but the record shows that he was in segregation for the entire period between the receipt of his files and the filing deadline.) At 80 minutes every other week, the most Socha could have gotten was about four hours of library time in the 40 days he had before his petition was due (assuming that he had three sessions over five weeks, at 80 minutes each). He had little to no opportunity to work with his materials in his cell.

Arguing against self-interest, the state appears to urge that inmates should feel free to file any piece of paper with the label "habeas corpus petition," and that should be enough to satisfy the statute of limitations. This is not the incentive we wish to create in a system that is already burdened with high filing levels. Under the state's proposed rule, the number of prisoners filing skeletal petitions just before the deadline would balloon, and one of two scenarios would play out: courts would be forced to send all of these petitions back for further factual allegations, providing an effective end-run around the one-year deadline in a large number of cases, or they would end up rejecting a large percentage of these petitions for being facially inadequate. In either case, we would be surprised to see the state taking the "anything goes" position it does here. It naturally would want the right to complain about the inadequacy of a proposed petition. If so, then a petitioner such as Socha is right to want to review the file and conduct his research before filing, so that he can avoid an immediate dismissal. See *Estremera*, 724 F.3d at 776 ("[F]iling a petition without research is risky: a good claim may be lost as undeveloped, or a bad claim may be advanced and rejected, blocking relief on a good claim later.").

Finally, Judge Stadtmueller's order granting Socha's motion to extend his time to file deserves brief mention. Although just by a day, Socha approached the court before his deadline expired, not after; that fact alone sets his case apart from the great majority of those involving untimely filings. As we said the last time we considered this case, "the facts related to equitable tolling were before the court" at the time Judge Stadtmueller granted the motion, and there was no bright-line bar on his actions. See *Socha I*, 621 F.3d at 671–72.

Judge Stadtmueller need not have granted the motion to extend time, but he did, after deciding that equitable tolling was warranted. While the decision to apply equitable tolling is within a district court's discretion, in general it is best if a second judge does not revisit that discretionary call after parties have relied on it. Taking everything into account, we conclude that the circumstances Socha faced were extraordinary, and that the district court's finding to the contrary was an abuse of discretion.

B

We now turn to the question whether Socha diligently pursued his rights during the period from July 16, 2007 (the date when his time to file began to run), to November 19, 2008, when he filed in compliance with Judge Stadtmueller's order. We are convinced that he did. Beginning long before his one-year period expired and continuing at regular intervals until he succeeded, Socha repeatedly wrote Sommers requesting access to his file. As time passed, Socha responded to changed circumstances, hoping to find some means of transmittal that Sommers would accept. When Sommers failed to act, Socha figured out who was in charge at the public defender's office and pleaded with him for help. On the second try, that worked: Lund eventually extracted the materials from Sommers and sent them directly to Socha. Once in possession of his materials, Socha used what little library time he could get to organize and read his file and work on his petition.

Socha's case is far from the typical one. Unlike the many cases in which a tardy petitioner puts nothing before the court and only later asks for equity to be exercised in his favor, Socha alerted the court before the deadline arrived and

sought to preserve his rights. He then filed a completed petition well within the additional time period he was granted—indeed, a month before the expiration of the "extra" time that he believed he had.

The district court faulted Socha for his "complete failure to develop a fallback plan." The court did not elaborate on what such a plan would have looked like, and we cannot think of one that takes into account the particulars of Socha's case. The notion that Socha was simply waiting around for his file to arrive is not consistent with the record. Even the state admits that "Socha was in fact busy working on his case in prison long before his petition was due," as he was "receiving representation from another inmate, Ronald Wagner, beginning in April, 2008." Wagner's attempts to obtain Socha's record through alternative means ultimately proved fruitless, but the fact that Socha was working with Wagner to complete his petition beginning in April further demonstrates that he was diligently pursuing his rights.

We do not put much stock in the district court's conclusion that Socha did not need all of the time he took because his habeas corpus petition "parroted" claims that he had raised in the state courts. It would have been difficult to do even that much without the papers in front of him. And Socha would have run into a different wall if he had tried to present claims that he failed to exhaust in the state courts. It is hazardous to conjecture about the amount of time a filing should have taken based on the end result; sometimes it takes longer to review the possibilities, discard the least promising, and write a concise pleading than it would to write a kitchen-sink petition. Perhaps a review of his entire record indicated to Socha that he was best served by repeat-

ing claims made by a member of the bar, instead of trying to craft legal arguments from scratch. He could not have known until he had the chance to review his file. The circumstances as a whole leave no room, we conclude, for a finding that Socha was not diligent.

**IV**

Equitable tolling is rare, but so are the facts of this case. Based on Socha's repeated efforts to obtain an unjustifiably withheld file, the minimal time he had in which to complete a petition afterward, and the initial judicial determination that tolling was appropriate, we conclude that it was an abuse of discretion to deny tolling of the AEDPA deadline. We reach this conclusion using the flexible, fact-specific standard described by the Supreme Court in *Holland*. In light of all the circumstances, Socha is entitled to equitable tolling of the one-year deadline for his habeas corpus petition.

The judgment of the district court is REVERSED and the petition is REMANDED for further proceedings consistent with this opinion. As the only issue that has been adjudicated thus far is the timeliness of the petition, we stress that our opinion is limited to that point and should not be understood as restricting any other arguments either the state or Socha wishes to raise.