In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-2482

KUNTA GRAY,

*Petitioner-Appellant,*

*v.*

DUSHAN ZATECKY, Superintendent, Pendleton
Correctional Facility,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-812-SEB-DML — **Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 10, 2017 — DECIDED AUGUST 2, 2017

Before WOOD, *Chief Judge*, and ROVNER and HAMILTON,
*Circuit Judges.*

WOOD, *Chief Judge*. During a drug deal that went bad,
shots were fired and Gregory Jones was fatally wounded. The
police arrested Kunta Gray for the crime, and a Marion
County (Indiana) jury later convicted him, twice, for the mur-
der and associated offenses. The Indiana courts ultimately up-
held the convictions, and so Gray filed this action in federal

court, seeking a writ of habeas corpus on several grounds. See 28 U.S.C. § 2254. Before we can reach those arguments, however, we must assure ourselves that his petition was timely. It is only if Gray qualifies for equitable tolling, because he filed after the one-year time limit for such petitions. 28 U.S.C. § 2244(d). We agree with the district court that he failed to make the necessary showing, and so we affirm its judgment.

## I

On the morning of November 16, 2000, Gray stopped by Jones's house in Indianapolis and made a deal to buy eight pounds of marijuana for $6,500—Gray was to bring the money by later that day, and the men would make the exchange. Gray duly returned that afternoon, accompanied by another man. Jones's friend Tracy Avant was in the living room at the time and observed Jones, Gray, and the other man retire to the rear of the house. Shortly thereafter, the third man returned, hit Avant with a revolver, threw him to the ground, and robbed him. Avant heard Jones say "don't do this" in the back of the house, and then he heard five to ten gunshots. Gray ran back through the living room carrying a gun and a trash bag, firing into the rear of the house as he fled. Emergency responders took Jones to the hospital, but he died there 12 days later from multiple gunshot wounds to his abdomen.

A Marion County jury found Gray guilty in March 2002 of murder, robbery, and a number of related crimes, but he convinced the state courts to overturn those convictions on post-conviction review. The state held a second trial in August 2007. It ended on the same note: the jury convicted him of felony murder, murder, robbery, attempted murder, and carrying a handgun without a license, and the court sentenced him to 85 years' imprisonment.

The retrial was a rocky affair. The prosecution used four of its eight peremptory challenges on black jurors. After trial, it emerged that a selected juror had been less than forthcoming on her juror questionnaire. These problems take on added significance since the prosecution's case was not especially strong. It hinged on testimony from Avant and Andrew White, both of whom maintained that Gray confessed while they shared a holding cell. Neither was a dream witness. Avant initially asserted that he was not present for the robbery. He struggled to identify the assailants, and he may have been high at the time of the crime. White's testimony was also problematic, partly because White was trying to get a lighter sentence. Worse, Jones had been White's friend, and Gray had robbed White in the past. Normally, Gray's earlier crime would have been inadmissible, but defense counsel introduced it to undermine White's credibility on the theory that White invented Gray's confession out of revenge. Unfortunately, the earlier robbery closely resembled the one against Jones, and so the jury learned that Gray had previously committed a crime nearly the same as the one of which he stood accused. Even so, the jury initially deadlocked. After receiving further instructions from the court, however, the jury notified the court that the hold-out juror had suddenly changed his or her vote. The foreperson commented to the court that "I have trouble submitting the change in good conscience," but the jury overcame those doubts and convicted Gray on all charges.

Gray's appeals proved unsuccessful, and his conviction became final on January 2, 2008. That started the one-year period for postconviction actions imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244(d)(1). Gray took no action until July 29, 2008 (208 days

later), when he filed a petition for postconviction relief in state court. This stopped the AEDPA clock until Indiana's denial of postconviction relief became final on August 8, 2012. See 28 U.S.C. § 2244(d)(2). On that date, Gray had 156 days left—until January 11, 2013—to file his federal habeas corpus petition. He did not submit it until April 29, 2013, 108 days after the calendar hit zero.

That left equitable tolling as his only hope, but the district court found him ineligible for that extraordinary measure and dismissed his petition without reaching the merits. We granted a certificate of appealability, requesting briefing on four issues: equitable tolling, ineffective assistance of counsel, whether striking the black jurors violated *Batson v. Kentucky*, 476 U.S. 79 (1986), and the possibility that Gray's due process rights were violated by the inaccurate questionnaire answers.

## II

Because the rest of Gray's appeal depends on our conclusion with respect to equitable tolling, we begin (and end) there. AEDPA imposes a strict one-year time limit for requesting a writ of habeas corpus. That period runs from the latest of four dates, which can interact with one another, depending on the appeals and state collateral relief the applicant seeks. Here, we begin with the date on which Gray's judgment became final. See 28 U.S.C. § 2244(d)(1). That started the clock, but 208 days later he sought collateral relief from Indiana's court. Under the statute, the time spent while the collateral proceedings were pending did not count toward the one-year limitations period. 28 U.S.C. § 2244(d)(2). In other words, the clock was stopped (or the statute was "tolled," as courts like to say) during the time when those proceedings were pending. The countdown to one year resumed on August 8, 2012,

when his state post-conviction proceedings came to an end and he still had 156 days—until January 11, 2013—during which he could have filed a timely federal petition. But he did not file anything until 108 days past that deadline. The Supreme Court has held that there is a narrow safety valve for people in Gray's position, in the form of equitable tolling—essentially, a brief extension of time during which a late filing will be accepted. *Holland v. Florida*, 560 U.S. 631 (2010). Unless Gray qualifies for that, he cannot pursue his federal petition for a writ of habeas corpus.

Equitable tolling is available when an applicant shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 649 (internal quotation marks omitted). The statute requires "reasonable diligence," not "maximum feasible diligence." *Id.* at 653 (citations omitted). The district court must evaluate the circumstances holistically, considering "the entire hand that the petitioner was dealt" rather than taking each fact in isolation. *Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014). Equitable tolling is "rare" but it does not "exist[] in name only." *Id.* at 684. It is instead a "highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." *Id.* (internal quotation marks and citation omitted). Appellate review reflects this flexibility; we may reverse only if the district court abuses its discretion. See *id.* at 678.

This is a demanding standard, and we cannot say that the district court strayed out of bounds in its determination that Gray has not met it. His main argument (really his only one) is that this case is like *Socha*, which found that the challenges faced by the eponymous petitioner cleared the *Holland* bar.

There are certainly similarities between *Socha* and Gray's case—both defendants were indigent, both proceeded *pro se* for a long time, and neither had any particular legal experience. But that describes most habeas corpus petitioners and thus by definition is not "extraordinary." A more relevant similarity, though regrettably also not an unusual one, is that both men had limited access to prison legal resources. Socha was held in administrative segregation, which limited his library access to 80 minutes a week—and the "library" consisted of "two computers with spotty internet access" that were "shared by 250 inmates." *Id.* at 680. Gray, for his part, alleges that his access to the prison's law library was constrained "due to various institutional lockdowns ranging from (2) weeks up to (10) months, with (2) lockdowns in the past (3) months lasting a total of (3) weeks." Most important, Gray and Socha both experienced long delays in obtaining the files they needed to prepare their petitions. Socha spent the better part of a year begging trial counsel for his file, while Gray waited 113 days for the Indiana Court of Appeals to give him his case record.

Indiana tries to trivialize the 113-day delay, but we do not make light of it. At oral argument the state suggested that so long as Gray received the documents before the one-year deadline, any delay in filing was entirely his responsibility. That cannot be right. This is a holistic inquiry, and the length of time remaining for the applicant to file is quite pertinent: several months will be one thing; two days quite another. Moreover, we reject the notion that a state's procrastination can torpedo an indigent prisoner's case. If this sort of delay becomes routine, prisoners may begin filing prophylactic habeas corpus petitions and immediately requesting a stay pending the state's provision of the required records. Indiana

professed indifference to this outcome at oral argument; it may wish to reconsider. Such a system would clutter the courts, as well as state legal offices, with petitions that the full record would show should never have been filed. We trust that this was just something said in the heat of argument.

That said, there are important differences between Gray's case and Socha's that support a different outcome. Socha's public defender refused to hand over his records for almost a year despite a stream of requests; the defender's superior ultimately had to step in and send the files himself. *Id.* at 679–80. Here, it appears that Gray simply sent his request and waited 113 days for Indiana to follow through. Granted, a near-four month delay is a substantial obstacle. But it is less daunting in duration and degree than the delay Socha faced. At the time Gray's petition for state postconviction relief became final, he had another 156 days in which to file his federal petition. Subtracting the 113 days it took Indiana to give him the files he wanted, he still had 43 days to work with. Gray argues that this overstates the time that was really (not theoretically) available to him, noting that "institutional lockdowns" restricted his access to legal resources and hence his ability to prepare his petition. Here again, the district court reasonably could have found that he did not make as compelling a showing as Socha, who was almost totally deprived of meaningful library access because of his placement in administrative segregation.

By so holding, we do not mean to say that *Socha* establishes the floor for a finding of extraordinary circumstances. On the contrary, we stressed that equitable tolling is not "a chimera" and that this is a "highly fact-dependent area." *Id.* at 684 (internal citation omitted). There is no avoiding the careful look

at each applicant's situation that this type of equitable stand-
ard calls for. Again bearing in mind the deferential standard
that applies to the district court's assessment of the case, we
find nothing in Gray's case that compels us to excuse him
from the one-year period of limitations.

We AFFIRM the judgment of the district court.